## Case No. 11,314.

### POSTMASTER GENERAL v. ROBBINS.

[1 Ware (165) 163.] [1]

District Court, D. Maine. Dec. Term, 1829.

DESCENT AND DISTRIBUTION—WIDOW'S ALLOWANCE —PRIORITY OF DEBT DUE UNITED STATES.

The act of congress of March 3, 1797 [1 Stat. 512] giving to debts due to the United States a priority over all other debts due from a deceased debtor, does not entitle them to receive their debt from the administrator prior to his payment of the allowance to the widow, made by the judge of probate under the state law regulating the descent and distribution of intestate estates.

At a former term of this court the plaintiff recovered judgment against Waterman Many, a deputy postmaster, on his official bond, for a balance due on his account with the general post-office, of moneys received for postage; and this is a scire facias to revive the judgment and obtain execution against his administrator. The defendant [Willard Robbins, administrator] has filed several pleas in answer, but the third embraces the matter which is relied upon in the defence. This sets forth the statute of Maine relating to the settlement of intestate estates. By this statute it is provided that if an estate is insolvent the debts due for taxes, debts due to the state, and those due for the expenses of the last sickness and funeral of the deceased shall be first paid; and there is another provision in the same act, that in all cases of intestacy, whether the estate is solvent or insolvent, the widow shall be allowed her wearing apparel, together with such further allowance of the personal estate of her husband as shall be decreed by the judge of probate, he having regard to her quality and degree, and the family under her care. The plea then alleges that the estate was represented as insolvent, that commissioners were appointed according to law to receive and allow the claims of creditors, and that on their report the estate was decreed by the court to be insolvent; that the judge allowed, by his decree, $150 to the widow, out of the personal estate of the deceased; that the administrator has settled his account in the probate office, and there is a balance in his favor on the settlement of $13.49, and that he is allowed in his account $150, decreed to the widow by

¹ [Reported by Hon. Ashur Ware, District Judge.]

the judge of probate, $10 for expenses of the last sickness and funeral charges and his charges of administration; that these charges, with the allowance to the widow, had exhausted the whole estate which had come into his hands as administrator, before the time of suing out the scire facias, and that he has no goods in his hands to be administered. To this plea there is a replication that, before any of these payments were made, the defendant had due notice of the demand of the plaintiff's, and of the priority of this demand against the estate of the deceased, by the laws of the United States. To this there is a rejoinder that the matter of the replication is insufficient to avoid the plea and sustain the action.

Mr. Shepley, Dist. Atty., for plaintiff.
C. S. Daveis, for defendant.

WARE, District Judge. The question which is presented by these pleadings and which has been argued at the bar, is, whether the debts due to the United States take precedence of the claims against the estate, which the plea admits to have been paid. The statute of Maine, relied upon in the plea, provides that in all cases of insolvency, before any distribution shall be made of the effects of the deceased among the general creditors, "the debts due for taxes, debts due to the state, and for the last sickness and necessary funeral expenses of the deceased, shall be first paid." 1 Laws Me. c. 51, § 25. In another part of the same act (section 39) there is another provision that, "in the settlement of intestate estates, whether solvent or insolvent, the widow shall be entitled to her wearing apparel, and such other and so much of the personal estate as the judge of probate shall determine to be necessary to her quality and degree, regard being had to the family under her care." If there be no widow, the judge of probate has the authority to make a similar allowance for the benefit of the children of the deceased, who are minors. The policy of the law, in these cases, places the claims of humanity above the claims of justice, and will not permit a helpless family to be turned out of doors in a state of entire destitution, though the provision which is made for their necessities is made at the expense of creditors. The amount to which this allowance may be raised, and the proportion which it may bear to the whole estate of the deceased is confided entirely to the discretion of the judge of probate, and this allowance when fixed by the decree of the court, is, like the widow's dower in the real estate of her husband, withdrawn from the estate, and is not considered as assets in the hands of the administrator for the payment of debts. The statute, with the proceedings under it in the court of probate, afford a complete protection to the administrator against this action, unless the operation of the statute is controlled and overruled by that of the

United States, relied upon in the replication. This act provides that "when the estate of any deceased debtor, in the hands of administrators or executors, shall be insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first paid." 2 Laws [Bior. & D.] 368 [1 Stat. p. 512, c. 20]. The paramount authority of the laws of the United States will give to their debts a precedence before any debts privileged by the laws of the state. But the payments shown in the plea, with the exception of that for the expenses of the last sickness, can in no proper sense be called debts due from the deceased. The expenses of last sickness are named in the account in a general charge with the funeral expenses, so that it is impossible to separate them, and say what proportion of the whole was for one, and what for the other. So far as this item includes the expenses of the last sickness, it is clearly a debt due from the deceased, and must stand, in point of privilege, after that due to the United States. So far as it is composed of funeral charges, it is not a debt due from the deceased, but more properly a charge on the administrator. The statute of Maine does indeed seem to contemplate funeral expenses as a debt due from the deceased, and assigns it a privilege in the same grade with taxes and debts due to the state. I do not mean to question the competency of the legislature to assign to this claim against the estate of a deceased person any rank or privilege which may seem just; but it appears too clear to admit of controversy, that a man cannot contract a debt after he is dead. In the nature of things, funeral expenses are a charge on the estate in the hands of the administrator, and stand in the same privilege with other charges of administration. But this point does not necessarily arise in the present case, as it appears from the plea that the whole estate which has come into the hands of the administrator has been exhausted by the payment of the allowance decreed to the widow, and the ordinary charges of administration.

The important point in the case is, whether the priority established by the laws of the United States attaches to the estate in the hands of the administrator, so that their debt must be paid before the allowance. decreed by the judge of probate, to the widow, the administrator having notice of their demand before the payment is made. This is maintained for the plaintiff, and denied for the defendant. The suit is in the name of the postmaster-general, but he sues merely as trustee for the United States. The debt is properly their debt, and the recovery would be exclusively for their benefit, and it was not disputed at the argument that this debt has all the privileges that it would have if the suit were in the name of the United States. In support of this claim, it is contended that the word "estate," in the statute, is intended to comprehend the whole property

of which the deceased debtor is possessed at the time of his death, and that the priority attaches to the whole. Several decisions have been made on the construction of the priority acts, but no one of them has presented these statutes in the precise aspect that is exhibited by this case. In every instance it has been a contest between the United States and another creditor. In these cases it has been decided that the priority given by the law does not create a lien on the debtor's estate, but merely makes the debt of the United States a privileged debt against the general assets of the debtor in the hands of his assignees or administrator, and rendering them personally liable, provided any other debt is paid before that due to the United States. U. S. v. Fisher, 2 Cranch [6 U. S.] 358; U. S. v. Hooe, 3 Cranch [7 U. S.] 73. If the statute does not create a lien, it would seem it will not remove or supersede an existing lien, and this opinion is strongly intimated in the last case (Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386) in which these acts have been brought to the notice of the supreme court. The case of Thelluson v. Smith, 2 Wheat. [15 U. S.] 396, appears to favor a contrary doctrine, but in the case last cited this is said to have been determined on its own particular circumstances. On this principle, the prior right of payment of the United States would not overreach the widow's right of dower in the real estate of her husband. Indeed, this was not contended at the argument. If this be conceded, what good reason can be given for making a distinction between her right of dower in the real estate of her husband, and her claim for an allowance out of his personal estate? If her lien for dower places her right, in point of privilege, before a debt of the United States, why should not her claim for an allowance? I can see no satisfactory reason on which a distinction can be supported. Her lien for dower, indeed, spreads itself over the whole real estate of the husband from the time of marriage, and the extent of the right is fixed and ascertained by the law. Her right in the personal estate attaches itself only to that of which he was possessed at the time of his death, and perhaps, under the just construction of the statute, subject to all liens subsisting at that time. It is also uncertain as to the amount, but is rendered certain by the decree of the judge of probate; and when it is ascertained, I can see no reason why her right in the personal estate is not as sacred, and as highly privileged by the law, as her right in the real estate. Both are equally withdrawn, by the state law, from the reach of creditors, and neither is considered as assets for the payment of debts. But however this may be, the case may well be decided on narrower grounds. The language of the act of the United States is, "when the estate of the deceased is insufficient to pay all the debts due from the deceased. the debt due to the United States shall be first paid," giving

a.priority to the debt due to the United States over all other debts. It is clear, from this language, that the statute looks at no other charge on the estate of a deceased debtor than debts properly so called. The United States are satisfied in giving a priority to their claim on the estate over all other debts. The allowance to the widow is no more a debt of the husband than her right of dower. They are both of them charges on the estate, created by the law. They are not created, nor can they be defeated, by any act of his. The law of the United States does not, in its terms, give to debts due to them a priority over charges of this nature. Its words are satisfied by a narrower construction, and to give to it this enlarged operation would be giving it an effect, by interpretation. beyond the strict and proper meaning of its terms. It would also be trenching on the settled and deliberate policy of the state legislation, which has ordained that a part of the property of a deceased insolvent debtor shall be subducted from his estate for the benefit of his wife and minor children, before any part can be reached by creditors. On this construction of the statute, it becomes unnecessary to give an opinion on another point which was raised and discussed at the argument; that is, whether, as the state legislature, under our constitution. has the exclusive power to regulate the descent and distribution of estates, they have not also the paramount authority to determine what part of the estate of a deceased debtor shall be assets in the hands of his personal representative, for the payment of debts. Plea in bar adjudged good.