[No. 34938.   Department Two.   September 3, 1959.]

*In the Matter of the Estate of* FLORENCE NETTLETON
SHOPTAW, *Deceased.*

UNITED STATES OF AMERICA, *Appellant,* v. RAYMOND PAUL
BROWN, *as Executor, Respondent.*[1]

*Charles P. Moriarty, Charles K. Rice, Lee A. Jackson,
A. F. Prescott,* and *Frank W. Rogers, Jr.,* for appellant.

[1]Reported in 343 P. (2d) 740.

HILL, J.—This is an appeal, on an agreed statement of facts, from an order entered in probate rejecting an executor's final report, and fixing the order of the payment of certain claims against an insolvent estate. The issue presented is the relative priority, in such an estate, of a physician's claim for services rendered during the deceased's last illness, and the claim of the United States for unpaid income taxes.

Dr. Donald D. Corlett rendered extensive medical services to the deceased for nearly eleven months, in what proved to be her last illness. He filed a claim against the estate for $3,820. The United States also filed a claim against the estate in the amount of $102,470.35 for income taxes for the years 1950 and 1951, together with penalties and interest owing. Both claims were allowed by the executor, as debts of the decedent, but no payments were made thereon.

The executor, in his final report, listed the remaining assets of the estate in the amount of $14,118.70, after paying the costs of administration. The agreed statement of facts recites that, "the estate is insolvent by virtue of the claims allowed as debts of the decedent."

Hearing was had upon the executor's final report, and the agreed statement of facts further recites that,

". . . the questions presented at this hearing were the amount of the claim of Dr. Donald D. Corlett for the expenses of the last illness of the decedent and whether the claim of Dr. Donald D. Corlett be first paid prior to the claim of the United States of America."

The superior court entered an order adjudging the sum of $3,116 to be the fair and reasonable value of Dr. Corlett's services during the decedent's last illness; directing that, after making adequate provision for the costs of administration, Dr. Corlett should be paid $3,116, and that the remainder of the estate should then apply towards the claim of the United States.

The United States has appealed this order, asserting the priority of its own claim over that of Dr. Corlett. The executor has paid the funds remaining in the estate into the

registry of the superior court, for the benefit of the prevailing litigant herein, has closed the estate, and takes no part in this appeal. Dr. Corlett is the respondent here.

By a special memorandum, filed by leave of the court after the oral argument, respondent asserts that the claim of the United States was not timely filed. This assertion is based on matters not included in the agreed statement of facts, and is, therefore, outside of the record; it cannot, for that reason, be considered on this appeal. It must be inferred, from the portion of the agreed statement of facts stating the questions presented at the hearing (quoted above), that this issue was not raised in the superior court, and, for that further reason, it cannot be considered here. In any event, no attack is made by respondent on that part of the order appealed from, which finds that the United States filed a claim on June 25, 1957, for $102,-470.35 for income deficiencies for 1950 and 1951. The agreed statement of facts states that notice to creditors was published March 18, 1957. The filing of a claim on June 25, 1957, was clearly within the six-months period allowed for the filing of claims. We come now to the question of whose claim has priority, that of Dr. Corlett or that of the United States.

RCW 11.76.110 provides that:

"The debts of the estate shall be paid in the following order:

"(1) Funeral expenses in such amount as the court shall order.

"(2) Expenses of the last sickness, in such amount as the court shall order.

"(3) Wages due for labor performed within sixty days immediately preceding the death of decedent.

"(4) Debts having preference by the laws of the United States.

"  .  .  ."

The trial court's order, giving priority to Dr. Corlett's claim in the sum of $3,116, was in keeping with the priorities established by this section of our probate code. The United States contends, however, that this statute, insofar as it prefers the expenses of the last sickness to those debts hav-

ing preference by Federal law, conflicts with 31 U. S. C. A. 191, which provides that:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; . . ."

The conflict between the Washington statute (RCW 11.76.110) and the Federal statute (31 U. S. C. A. 191) in the situation where an estate is insufficient to pay the debts due from the deceased, is obvious. Where the state and Federal statutes are in conflict, the Federal law must, of course, prevail. The second paragraph of Art. VI of the United States constitution states:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

The only issue here is whether the expenses of the last illness represent "debts due from the deceased," within the purview of the Federal statute. The test is whether, if the decedent had recovered from her illness, she would have been personally liable for the payment of those obligations. The general rule is that the patient is liable, either under express or implied contract, for the medical services rendered to him. The patient's liability arises as the physician's services are rendered on his behalf during his lifetime. After the patient's death, his physician's claim for such services is a debt due from the decedent, and, therefore, must yield precedence to any debts due to the United States under the terms of the Federal priority statute. *Postmaster General v. Robbins,* 19 Fed. Cas. 1126 (D. C., D. Maine, 1829); *United States v. Eggleston,* 25 Fed. Cas. 979 (C. C., D. Oregon, 1877); *Estate of Muldoon* (1954), 128 Cal. App. (2d) 284, 275 P. (2d) 597. This requires that the order giving Dr. Corlett priority over the claim of the

United States be reversed, and that the United States be given priority.

This is not the result we would have preferred to reach. It would seem to us that there is much to be said for the legislature's determination that funeral expenses (in such amount as the court shall order), expenses of last sickness (in such amount as the court shall order), and wages for labor performed within sixty days immediately preceding the death of the decedent, should have priority over debts due the United States.

In *Cunningham v. Lakin* (1908), 50 Wash. 394, 97 Pac. 447, we commented on the fact that expenses of the last illness differed from funeral and other administration expenses, since they are for services rendered during the life of the deceased, and then said (p. 396),

" . . . but the necessity for their rendition is similar to that of the latter [funeral and administration expenses], and the law authorizing their payment can be justified on like principles."

What makes this result particularly irksome is the realization that in some areas the United States does not exact the pound of flesh merely because it is "so nominated in the bond" (Merchant of Venice, Act IV, Scene 1).

In the northern district of Georgia in the recent case of *McCain v. The Liberty National Bank* (1953), 45 American Federal Tax Reports 1204 (Prentice Hall), the United States, in an insolvent estate, permitted, without objection, the expenses of the decedent's last illness to be listed as a claim prior in right to its own claim for unpaid taxes. The court commented (p. 1206),

"Such a concession by the Government is certainly in accord with the dictates of wisdom and humanity, for it would be unfortunate indeed if a man in his last illness could not be attended by a physician, . . . without any assurance that the doctor . . . would be paid."

Here, contrary to the "dictates of wisdom and humanity," the doctor goes unpaid for his services during a last illness because it is "so nominated in the bond."

The Federal statute (31 U. S. C. A. 191, R. S. § 3466), was first enacted in 1797, and there have been no significant modifications. At that time, the taxes imposed by the United States were few and light; the number who paid them were not many; and the income tax had not been thought of. Times have changed, and congressional reappraisal of the "wisdom and justice" of this statute would seem to be in order.

Regretfully the superior court's order is reversed, and the cause is remanded with instructions that the claim of the United States shall have priority over that of Dr. Corlett.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.