[PRACTICE.]

The ANTELOPE.     The Spanish and Portuguese Consuls,
Claimants.

Further explanation of the decree of this Court, in S. C., *ante* Vol.
X. p. 66, and vol. XI. p. 413.

The Africans captured, except those restored to the Spanish claim-
ants, to be delivered to the United States, absolutely and uncondi-
tionally, without the precedent payment of expenses.

No judgment or decree can be rendered directly against the United
States for costs and expenses.

The fees and compensation to the marshal, where the government is
a party to the suit, and his fees or compensation are chargeable to
the United States, are to be paid out of the treasury, upon a certifi-
cate of the amount, to be made by the Court, or one of the judges.

Decree of the Circuit Court, in respect to the apportionment among
the several parties to the suit of the costs and expenses, affirmed.

Identity of the Africans restored to the Spanish claimant established
by sufficient evidence.

THIS is the same cause which is reported *ante*, vol. X. p.
66. and vol. XI. p. 413. and was again brought before the
Court upon a further appeal, and certificate of a division of
opinions as to the proceedings of the Court below in exe-
cution of the former decrees of this Court.

*March 6th.*     It was argued by the *Attorney General* and Mr. *Key* for
the appellants, and by Mr. *Berrien,* Mr. *C. J. Ingersoll,* and
Mr. *Wilde,* for the respondents.

*March 15th.*     Mr. Justice TRIMBLE delivered the opinion of the Court.
This case having been before this Court, and a decree
rendered therein at February term, 1825, and again brought
up, and an explanatory decree made therein at February
term, 1826. the reports of the case in 10 *Wheat. Rep.* 66.
and 11 *Wheat. Rep.* 413., are referred to for the general
history of its facts and circumstances, and for the principles
settled in it by the former decrees of this Court.   The case
was remanded to the Circuit Court, with directions to make

a final disposition of the controversy between the parties, pursuant to the principles of the decrees of 1825 and 1826 of this Court.

The Circuit Court, in order to enable it to decree finally in the case, directed the register to take and report an account of the costs, and also of the expenses of keeping, maintaining, &c. of the Africans, by the marshal, and which account was accordingly reported. Exceptions were filed to the report by both the Portuguese and Spanish claimants.

The Circuit Court also caused proofs to be taken for the purpose of identifying individually the Africans to be delivered to the Spanish claimants, as directed by the decree of 1826.

Thus circumstanced, the case came on for final hearing before the Circuit Court. The Court decreed that the Portuguese claimant should not be made liable for costs, or any proportion of the expenses and charges of the marshal for maintaining, &c. the Africans; and being of opinion that thirty-nine of the Africans were sufficiently identified by proof, as being the property of the Spanish claimants, directed the thirty-nine Africans, so identified, to be delivered to the Spanish claimants, upon their paying a proportion of the costs and expenses reported by the registrar, in the ratio of the number of Africans delivered, to the whole number; and the Circuit Court was further of opinion, that the residue of the Africans not directed to be delivered to the Spanish claimants, should be delivered to the United States, to be disposed of according to law; but, on the question whether they shall be delivered absolutely, or on condition of payment of the balance of the expenses which will remain unsatisfied after charging the Africans adjudged to the Spanish claimants in their due ratio, the judges of the Circuit Court being divided in opinion, ordered this difference of opinion to be certified to this Court.

The case comes up on this certificate of division, and, also, upon an appeal prayed by the District Attorney on behalf of the United States, and allowed, "From so much of the said final order of the Circuit Court, as relates to the apportionment among the several parties of the costs and expenses, in the preservation. maintenance,

1827.

The
Antelope.

and custody, of the said Africans, and of the costs and ex-penses of the various proceedings which have been had in relation to the said Africans, and, also, from so much of said order as decrees thirty-nine of the said Africans to the Spanish claimants."

We will first consider the question arising upon the certificate of division of opinion between the judges of the Circuit Court.

Question as to the marshal's expenses.

It appears, from the opinion delivered by the Circuit Court, and from the registrar's report, that, in making up that report as to the amount of expenses, sixteen cents *per diem* was allowed the marshal for the custody, maintenance, &c. of the Africans ; and the Spanish claimants were charged, as a condition precedent, with the proportion of expenses of the marshal, after this rate, in the ratio of the number of Africans to be delivered to them. The residue of the marshal's expenses, at the same rate *per diem*, is supposed to be meant by the term " expenses," in the question on which the judges were opposed in opinion ; and it is supposed the question upon which the judges were opposed in opinion was, whether the Africans not directed to be delivered to the Spanish claimants, should be delivered by the marshal to the United States, absolutely and unconditionally, to be disposed of according to law, or whether it should be imposed on the United States as a condition precedent to their delivery, that the United States should pay to the marshal his claim for expenses at the rate aforesaid, in the ratio of the number of Africans to be delivered to the United States.

The Spanish claimants have not appealed from the decree of the Circuit Court. As the Court had decided that they ought to bear some proportion of the expenses, it was necessary, for the purpose of ascertaining the amount which they were to pay, to fix upon some data for making up the account of expenses so far as related to them. But, as they do not complain, this Court is not called upon to decide whether they were overcharged or not, nor to determine whether the rate of sixteen cents *per diem* was warranted by law, as the Circuit Court supposed, so far as the Spanish claimants are concerned.

As relates to the United States, the question propounded by the judges of the Circuit Court, and upon which they were divided in opinion, does not necessarily draw in question the data or rate of the marshal's allowance for expenses; but whether the payment of his expenses, at any rate, or to any amount, ought to be made a precedent condition to the delivery of the Africans to the United States. It may well be doubted, however, whether the State law does, as supposed by the Court, authorize the marshal to charge, as matter of right, sixteen cents *per diem*, for keeping, maintaining, &c. the Africans; although it might furnish some guide, in an appeal to the sound discretion and justice of the government, in making him a reasonable compensation. It is true, the first section of the "Act for providing compensation for the marshal," (3d vol. ch. 125.) after declaring the fees and compensation to be allowed the marshal for certain enumerated services, &c. adds, "For all other services not herein enumerated, such fees or compensation as are allowed in the Supreme Court of the State where the services are rendered." This has generally been construed, and, we think, rightly, to mean, that where the services performed are not enumerated in the act of Congress, but such services are enumerated, and a fixed allowance made therefor in the State laws, they shall fix the rule of compensation. The case under consideration is wholly unprovided for by the laws and usages of the State. The Africans to be delivered to the United States, are neither slaves in contemplation of law, nor prisoners of war, nor persons charged with crimes. The compensations allowed by the laws of the State to sheriffs and jailors, in these cases, do not, therefore, furnish any positive rule of law or right, as to the compensation which ought to be allowed the marshal in the peculiar circumstances attending these Africans. He is, no doubt, entitled to a reasonable compensation; but that must depend upon the circumstances of the case, and not any positive rule. But be that as it may, it could not legally enter into the judgment and decree of the Court, so far as that judgment or decree was to affect the rights of the United States, or the rights of the marshal as

1827.

The
Antelope.

No judgment
or decree can
be rendered
against the
United States
for costs or expenses.

against the United States. It is a general rule, that no Court can make a direct judgment or decree against the United States, for costs and expenses, in a suit to which the United States is party, either on behalf of any suitor, or any officer of the government. As to the officers of the government, the law expressly provides a different mode..

The third section of the "Act for regulating process," &c. (vol. 2. ch. 137.) makes provision for the fees and compensation to be allowed the marshal, similar to the "Act for providing for compensation to marshals," &c. above cited. The fourth section makes some further regulations concerning the fees and compensation to be allowed clerks and marshals, and then provides, "that the same having been examined and certified by the Court, or one of the judges of it, in which the services shall have been rendered, shall be passed in the usual manner at, and the amount thereof paid out of, the treasury of the United States," &c.

Marshal's expenses to be paid out of the treasury, upon a certificate of the Court.

These provisions show, we think, incontestably, that, whether the marshal's fees and compensation for services rendered the United States be fixed by some positive statutory rule, as in enumerated services, or depends upon what is reasonable and just under the circumstances of the case, as in non-enumerated services, they must be certified to, and paid out of, the treasury, and cannot lawfully constitute any part of the judgment or decree in the cause. It would, indeed, be extraordinary, if the marshal, who is the servant of the government, and holds possession of the Africans merely by its authority, could obstruct the operations of the government by a claim for compensation for his services. The laws give the marshal no lien on the Africans, and we can discover no principle which will justify the Court in creating a lien, in effect, by its decree. There is no necessity for such a proceeding.

The seventh section of "An act in addition to the acts prohibiting the slave trade," appropriates one hundred thousand dollars to carry the law into effect. The second section of the act authorizes the President of the United States to make such regulations and arrangements as he may deem

expedient for the safe keeping, support, and removal, beyond the limits of the United States, all such negroes," &c. (5 vol. ch. 511.)

It is not to be doubted, that if a reasonable account for expenses were certified according to law, that arrangements would be made to pay it out of the fund appropriated for carrying into effect the laws prohibiting the slave trade.

We are of opinion it ought to be certified to the Circuit Court, that all the Africans captured in the Antelope, except those directed to be delivered to the Spanish claimants, should be decreed to be delivered to the United States, absolutely and unconditionally, without the precedent payment of expenses.

In that part of the case brought up by appeal, it is insisted on behalf of the United States, that so much of the decree of the Circuit Court " as relates to the apportionment among the several parties of the costs and expenses in the preservation, maintenance, and custody of the Africans, and the costs and expenses of the various proceedings which have been had in relation to said Africans," is erroneous. It is contended, that these costs and expenses were occasioned by the prosecution of a groundless claim by the Portuguese and Spanish claimants, and that they should have been decreed to pay them.

It may well be doubted whether these questions are now open to discussion. By a former order and decree of the Circuit Court, made before the former appeals, the ordinary costs and charges were regulated, and they were paid accordingly; that order is not now before this Court in this appeal. By the former decree of the Circuit Court, rendered before the former appeals, a principle was established as to the ratio in which the Spanish and Portuguese claimants should be chargeable with the expenses of maintenance, &c. The principle was, that they should be charged in the ratio of the number of Africans to be delivered to them respectively.

There was no appeal from that part of the former decree of the Circuit Court ; or if there was, it was virtually affirmed by the former decree of this Court.

In the application of the principle to the case as it now

*Margin notes:*
1827.
The Antelope.

Question as to the apportionment of the costs and expenses.

The
Antelope.

stands, it seems to follow, necessarily, that as none of the Africans are to be delivered to the Portuguese claimant, he should pay none of the expenses of keeping them ; and that the Spaniard should pay in the ratio of thirty-nine, the number to be delivered to him.   The condition of the Portuguese consul, too, is very peculiar.   Under the circumstances in which these Africans were captured, and brought into the United States, it was his duty to interpose a claim for part of them, on behalf of the subjects of his majesty the King of Portugal.   That claim was sustained in the District and Circuit Courts, and the general propriety of the claim was also recognised by the former decree of this Court, but as no individual Portuguese claimant of the property appeared before the hearing of the appeal, the claim of the Vice Consul of Portugal was dismissed on that ground.   It would be too much to visit him with the extraordinary expenses under such circumstances, and he has heretofore paid his proportion of the ordinary expenses of the suit.

We think there is no just ground of complaint on the part of the United States, that the Spanish claimants have not been burdened with more than a rateable proportion of the expense of keeping the Africans.

Evidence sufficient to identify the Africans delivered to the Spanish claimants.

It only remains to be inquired, whether the Circuit Court erred in directing thirty-nine of the Africans to be delivered to the Spanish claimants.

It has been argued, that there is no credible and competent evidence to identify them, or any of them.

We are not of that opinion.   We think, that under the peculiar and special circumstances of the case, the evidence of identity is competent, credible, and reasonably satisfactory, to identify the whole thirty-nine.

It ought not to be forgotten, that in the original cause it had been established to the satisfaction of this Court, that ninety-three of the Africans brought in with the Antelope, were the property of the Spanish claimants ; but, as many of the Africans had died, it was the opinion of this Court, that number should be reduced according to the whole number living.   The Circuit Court, proceeding upon this principle, fixed the whole number to which the Spanish claim-

ants were entitled at fifty, and then proceeded to inquire as to their identity.

Grondona, who had been examined as a witness in the original cause, was second officer on board the Antelope when the Spanish Africans were purchased, and put on board the Antelope, on the coast of Africa.

It appears, that the Africans captured, and brought in with the Antelope, were put into the possession of Mr. William Richardson; and that he had about fifty of them employed at work upon the fortifications at Savannah: that while there, Grondona came out with the marshal for the purpose of identifying the Spanish Africans; that the fifty Africans were drawn up in a line; that Grondona made signs, and spoke to the negroes, and they to him, and they generally appeared to recognise him as an acquaintance. On cross-examination, he says, he cannot say that every one of the negroes recognised the sign made by the person accompanying the marshal to the fortifications, but that they generally did:

The Africans of the Antelope being paraded in front of the court house, Mr. Richardson was directed by the Court to point out, and designate, individually, the Africans who had worked on the fortifications, and he designated thirty-four. It is proved by Mr. Morel, the marshal, that Grondona recognised five others, who were with other persons, and that they appeared to recognise Grondona as an acquaintance. These five are described by name, and pointed out by other witnesses.

Before these proofs were taken in open Court, for the purpose of identifying the Africans claimed by the Spaniards, Grondona had disappeared, and it is suggested was dead. He had, however, in his examination as a witness in chief in the cause, shown that he was an officer on board, and knew the Africans belonging to the Spanish claimants. Grondona, and the Africans, both spoke languages not understood by the witnesses; yet it could well be seen by them that Grondona and the Africans knew and understood each other; and Mr. Richardson swears, that many of them appeared to know him very well, and that he claimed them as

part of the Africans originally put on board the Antelope by the Spanish owners.

·We·think this evidence was sufficient, under the very peculiar circumstances of this case, reasonably to satisfy the mind of the identity of thirty-nine of the Africans as belonging to the Spanish claimants.

DECREE and CERTIFICATE. This cause came¯on, &c. On consideration whereof, this Court is of opinion, that there is no error in the decree of the Circuit Court so far as the same proceeds, and that it be AFFIRMED; and upon the question on which the judges of the Circuit Court were divided in opinion; it is the opinion of this Court, that all the Africans, not to be delivered to the Spanish claimants, ought to be decreed to be delivered to the United States, unconditionally, and without the precedent payment of expenses, to be by them disposed of according to law.