## Case No. 14,715.

UNITED STATES v. CANAL BANK.

[3 Story, 79; [1] 7 Law Rep. 88.]

Circuit Court, D. Maine. May Term, 1844.

UNITED STATES—PRIORITY—DEEDS—RECORD—ATTACHMENT.

1. The United States have no such priority over other creditors of their debtors, as to entitle them to a prior satisfaction, by attachment and levy, over prior attaching creditors.

[Cited in U. S. v. Griswold, 8 Fed. 501; Bush v. U. S., 14 Fed. 323.]

2. In Massachusetts and Maine, a creditor, attaching real estate, can hold the same against a person purchasing prior to the attachment, but whose deed is not recorded until after the attachment; provided the attaching creditor has no notice of the deed, at the time of the attachment.

3. The United States, by attachment and levy of execution upon real estate, do not acquire any better title to the same, than the debtor himself had.

4. B. attached certain land, as the property of C., on October 4, 1839, and levied an execution thereon, on November 11, 1840. C. conveyed the same land to H. by deed, prior to the attachment, but the deed was not recorded until October 26, 1839, and B. had no notice thereof, prior to that time.. The United States recovered judgment against C. and H. on duty bonds, subsequent to October, 1839, and levied their execution on the same premises, prior to November 11, 1840, "as the estate of any or all the debtors." It was *held*, that the United States were not entitled to a priority against B.

This was a writ of entry, on the plaintiffs' own seisin, wherein they demanded of the defendants seisin and possession of certain premises, situated in Portland, Maine, described in the writ. It appeared, from the agreed statement of facts, that on the 24th of October, 1839, the present defendants attached certain real estate, of which the demanded premises composed a part, on a writ against James C. Churchill and Caleb S. Carter. Having obtained judgment, the present defendants caused their execution to be duly levied thereon, November 11, 1840, agreeably to the laws of Maine. It also appeared, that on the —— day of October, 1839, Churchill, and Churchill and Carter, conveyed the demanded premises, by certain deeds, to Noah Hinkley; but the deeds were not recorded, nor their existence known to the present defendants, until October 26, 1839, and no change of possession of the premises had taken place. It further appeared, that the plaintiffs, after the attachments before mentioned, commenced suits against the said Churchill, Carter and Hinkley, on duty bonds, falling due subsequent to the attachments before mentioned; that they recovered judgment, and caused their executions, issued thereon, to be levied on a part of the demanded premises, "as the estate of any or all the debtors," prior to the levy of the defendants' executions before mentioned.

[1] [Reported by William W. Story, Esq.]

It was agreed, that the conveyances from Churchill, and Churchill and Carter, to Hinkley, were not an assignment and transfer of all their property, and that they never made a general assignment of all their property, until long after that transaction, when they did so under the provisions of the bankrupt law, in 1842. If, upon these facts, the plaintiffs could maintain this action, judgment was to be entered in their favor, for that part of the demanded premises included in their levy; otherwise, judgment was to be rendered for the defendants.

Parks, Dist. Atty., for the United States.
Mr. Goodenow, for the tenants.

STORY, Circuit Justice. Upon this statement of the facts, several questions have been suggested. In the first place, whether the United States have any priority, or privilege, in respect to the debts due to them by their debtors, over the debts due to private persons, so as to entitle them to a prior satisfaction, upon any judgments obtained against their debtors, out of the property attached, before other attaching creditors, whose attachments are of an earlier date. In my judgment they have not. It has long since been settled, by the solemn adjudications of the supreme court, that the United States do not possess any general right of priority or privilege over private creditors, for the satisfaction of the debts due to them, founded upon any general prerogative, belonging to the government in its sovereign capacity; but that all the priority or privilege, which the government is at liberty to assert, is or must be founded upon some statute, passed by congress, in virtue of its constitutional authority. This was expressly so held in U. S. v. Fisher, 2 Cranch [6 U. S.] 358, 396, and the doctrine has ever since been strictly adhered to. U. S. v. Hooe, 3 Cranch [7 U. S.] 73; Prince v. Bartlett, 8 Cranch [12 U. S.] 431; Thelleson v. Smith, 2 Wheat. [15 U. S.] 396; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 387. It is not here, as it is in England, where the sovereign is entitled, in virtue of his prerogative, to a priority over private creditors, for satisfaction of the debts due to the crown. Com. Dig. "Prerogative," D, 86; Id. "Debt," G, 8, G, 9. Four classes of cases only are provided for by Act March 3, 1797, c. 74, § 5 [1 Story's Laws, 465; 1 Stat. 515]; and the same are in substance re-enacted in the revenue collection act of 1799 (chapter 128, § 65 [1 Story's Laws, 630; 1 Stat. 676]. First, cases where the estate and effects of any deceased debtor in the hands of his executors or administrators, are insufficient to pay his debts. Secondly, cases where the debtor, not having property sufficient to pay all his just debts, has made a voluntary assignment thereof for the benefit of his creditors. Thirdly, cases where the estate and effects of an absconding, conceal-ed, or absent debtor, have been attached by process of law. And, fourthly, cases where the debtor has committed a legal act of bankruptcy. The debtors, in the present case, do not fall within either of these predicaments. But the case of Prince v. Bartlett, 8 Cranch [12 U. S.] 431, is directly in point, to the very case of conflicting attachments; and decides, that in such a case the private creditor, having the prior attachment on the property, is entitled to a preference over the subsequent attachment of the United States.

In the next place, the question arises, whether an attaching creditor is entitled to satisfaction, out of the real estate of his debtor, against a bona fide purchaser of the same estate, for a valuable consideration, without notice, whose deed is not recorded in the registry of deeds, until after the attachment is made. As an original question, I should have entertained very great doubts, whether the attaching creditor had any such right; at least, unless the purchaser fraudulently, or by gross negligence, withholds his deed from being recorded until after the attachment, and thereby designedly misleads, or actually injures the other creditors of the debtor. My opinion upon this subject, independent of authority, would be, that an attaching creditor, in all cases, except cases of such fraud, or gross negligence, can entitle himself only to the same interests and rights in the estates attached, as the debtor himself has, or would have, at the time of the attachment, against the purchaser. But I understand that, under the local laws of Massachusetts and Maine, (which upon this subject are the same,) it has been held, that the attaching creditor is entitled to a prior satisfaction, out of the real estate attached, if he has not, at the time of the attachment, any notice of the prior unrecorded deed; or if the purchaser has not, with all reasonable diligence procured his deed to be recorded. See Farnsworth v. Childs, 4 Mass. 637; Davis v. Blunt, 6 Mass. 487; Prescott v. Heard, 10 Mass. 60; Priest v. Rice, 1 Pick. 164; Cushing v. Hurd, 4 Pick. 253. See, also, Briggs v. French [Case No. 1,871]; Stanley v. Perley, 5 Greenl. 369. In the present case, it is not suggested, that Hinkley's deed might not, with reasonable diligence, have been recorded, before the attachment of the tenants was made. Following, therefore, the local decisions upon this subject, which, as a rule of real property, governing many titles in the state, and also as a construction of the nature and operation of local statutes, ought, in my judgment, to be followed, I have no difficulty in saying, that the attachment of the tenants has a priority over the conveyances to Hinkley.

Then, in the next and last place, does it make any difference, that the United States are attaching creditors of Hinkley, and have levied their execution upon the demanded premises? In my opinion it does not. Generally speaking, an attaching creditor is

deemed to be in the same situation as a second purchaser, according to the decisions in Massachusetts and Maine; and we all know, that a second purchaser is not affected with the title of any third persons in the property, of which he has no notice. In the present case, Hinkley's title was subordinate to that of the tenants, under their prior attachment, and the United States can properly claim, against the tenants, the same rights only that Hinkley himself might claim; for the title of the United States is but a derivative title under Hinkley. The case is not like that of Coffin v. Ray, 1 Metc. [Mass.] 212, where the grantee, under whom the attaching creditor claimed, had notice of the unregistered deed of a prior grantee, and the court held, that as the attaching creditor had no notice of such prior deed at the time of his attachment, although he had before the levy of the execution, he was entitled to hold against the grantee of such prior deed. Here, the United States, at the time of their attachment, either knew, or might have known, of the prior attachment of the defendants, and that Hinkley's deed was not, at that time, recorded. But whether the United States did know, or might have known, of the prior attachment of the tenants, or not, is immaterial, since such knowledge in Hinkley could not have given validity to his title, against the prior attachment of the tenants. And if the United States are to be treated as purchasers at all, they must be treated as purchasers of all Hinkley's rights in the premises, subject to the prior incumbrances thereon. The case of Coffin v. Ray, supra, certainly goes very far, and places the attaching creditor in a better situation, than that of the grantee, under whom he claims title. But it is distinguishable from the present case in the material circumstances, that in that case, the notice created a mere personal equity, affecting the grantee alone, and thus would deprive him of the right to set up his title, as a bona fide purchaser, without notice, against the prior grantee; whereas, in the present case, the attaching creditor, by his prior attachment, acquired a right in rem, and no personal equity whatsoever applies to him, founded upon notice of Hinkley's deed, of which the United States could avail themselves.

Judgment for the tenants.