## Case No. 15,027.

UNITED STATES v. EGGLESTON et al.

[4 Sawy. 199; 23 Int. Rev. Rec. 113; 9 Chi. Leg. News, 218; 15 Alb. Law J. 493.] [1]

Circuit Court, D. Oregon. March 5, 1877.

EVIDENCE—TREASURY TRANSCRIPTS—PRIORITY OF UNITED STATES—ADMINISTRATORS—ASSETS —CHARGES UPON ESTATE—EXPENSES.

1. The transcript of the books and proceedings of the treasury department, provided for in section 886 of the Revised Statutes, in relation to the accounts of persons accountable for public money, is prima facie evidence of the facts stated therein, so far as the same are authorized by law.

2. Nothing is assets in the hands of an administrator, applicable to the payment of a demand

against the estate, within the meaning of section 1103 of the Oregon Civil Code, but money—something which is a legal tender.

3. Semble, that under section 1140 of the Oregon Civil Code, even money in the hands of an administrator is not assets applicable to the payment of a claim, until its payment has been directed by the county court.

4. A debt due an estate from the administrator thereof, and returned on the inventory as solvent, is presumed to have been collected, and is, therefore, assets in his hands, applicable to the payment of a debt due from the deceased to the United States.

5. The priority given to the United States by section 3466 of the Revised Statutes in the case of insolvent debtors, is not a lien upon the property of the insolvents in the hands of the assignee or administrator, but only a right to a priority of payment out of the proceeds of such property after notice of the claim.

6. Taxes and funeral charges are not "debts due from the deceased," within the meaning of section 3466, supra, but charges imposed thereon by the law of the state, which the administrator is bound to discharge before satisfying any claim of the United States as creditor of the deceased.

7. Expenses of last illness are a "debt due from the deceased," and under section 3466, supra, a debt due the United States is to be preferred to them, but if duly paid by the administrator without notice of the claim of the United States, the priority of the latter is lost.

8. The priority of the United States only extends to the net proceeds of the property of the deceased, and therefore the necessary expenses of the administration are first to be paid; but this does not include the costs and expenses of defending an action like this, where the claim was prima facie just, and ought to have been allowed.

Action on paymaster's bond [by the United States against Virgil S. Eggleston and others].

Rufus Mallory, U. S. Atty.

Walter W. Thayer and Richard Williams, for defendant.

DEADY, District Judge. On July 10, 1873, the defendant Eggleston, being a paymaster in the army of the United States, gave a bond to the plaintiff, with the defendant Robie and the deceased Alexander Miller as his sureties therein, in the sum of $40,000, conditioned, among other things, that said Eggleston would account for all moneys received by him as such paymaster, and, when thereunto required, would refund any such moneys remaining in his hands unaccounted for.

On December 15, 1875, upon a statement and adjustment of Eggleston's accounts at the treasury department, it was ascertained and certified that there remained in his hands unaccounted for, of the moneys received by him under the bond aforesaid, the sum of $12,413.45.

On October 6, 1875, Miller, one of the sureties aforesaid, died, and on December 7, 1875, the defendant Nurse was appointed administrator of his estate by the county court of Lake county, Oregon; and on February 20, 1876, the demand was duly

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 15 Alb. Law J. contains only a partial report.]

presented to said Nurse for payment, and by him disallowed.

Subsequently this action was brought by the United States upon Eggleston's bond, to recover the sum aforesaid. Neither Eggleston nor Robie have appeared or been served with the summons. The complaint alleges that Nurse "has in his possession, as such administrator, property belonging to said estate applicable to the payment of the money above mentioned."

Nurse, answering the complaint, admits the execution of the bond, but denies the remaining allegations of the complaint, and particularly that he has in his hands property of said estate applicable to the payment of the plaintiff's demand. The case was tried by the court without the intervention of a jury.

The transcript from the books and proceedings of the treasury department shows that the defendant Eggleston, by his own account current, is in arrear to the amount of $12,319.40, and that in addition to this sum, $94.05 of the credits claimed by him in such account are unlawful or inaccurate, making the whole indebtedness under the bond of $12,413.45.

By section 886 of the Revised Statutes, this transcript is made prima facie evidence of the facts stated therein, so far as the same are authorized by law. Walton v. U. S., 9 Wheat. [22 U. S.] 655; U. S. v. Buford, 3 Pet. [28 U. S.] 29; U. S. v. Jones, 8 Pet. [33 U. S.] 384; Gratiot v. U. S., 15 Pet. [40 U. S.] 369; U. S. v. Eckford's Ex'rs, 1 How. [42 U. S.] 263; Hoyt v. U. S., 10 How. [51 U. S.] 132; Bruce v. U. S., 17 How. [58 U. S.] 438.

Nothing appearing to the contrary of this, the plaintiff is entitled of course to judgment against the defendant Nurse, as administrator of the estate of Miller, for the said sum of $12,413.45, to be satisfied out of the goods of his intestate. But the plaintiff also claims that it appears from the evidence that at the commencement of this action, there was $4,950.33 in Nurse's hands as such administrator, applicable to the satisfaction of this demand, and therefore there should be judgment against him personally for that amount, with interest from the date of the inventory. This conclusion is based upon section 1103 of the Oregon Civil Code, which provides that the effect of a judgment against an administrator is only to establish the claim, so as to require it to be satisfied in due course of administration, "unless it appear that the complaint alleged assets in his hands applicable to the satisfaction of such claim, and that such allegation was admitted or found to be true, in which case the judgment * * * may be enforced against such * * * administrator personally."

As to the facts, it appears from the inventory and the testimony of Nurse at the time of his appointment as administrator,

he was indebted to the estate of Miller in the sum of $6,665, less sundry set-offs amounting to $1,759.67, and a claim to recover $800 damages for the failure of title to twenty pack-mules which he had purchased from Miller in his life-time, leaving a balance due said estate of $4,105.33. This debt was returned as solvent by the administrator, and so appraised by the appraisers. The whole amount of property on the inventory was appraised at $4,605.33. The other $500 consists of personal property, debts due the estate from third persons, and interests in mining claims.

Counsel for the plaintiff maintains that all property upon the inventory is "assets" applicable to the payment of this demand within the meaning of that term as used in section 1103, supra, and therefore insists upon a judgment to that extent against Nurse, to be satisfied de bonus propriis.

No authority has been cited by counsel upon this point, and I have not found any directly bearing on it. My own conclusion is, that the personal property or choses in action in the hands of an administrator is not assets applicable to the satisfaction—payment—of a demand against the estate within the meaning of this section; and that nothing is such an asset but money—that which is a legal tender, and with which a debt can be discharged.

This cannot be done with property or choses in action. If the administrator neglects to convert the property in his hands into money, so as to be able to satisfy the claims against the estate, he is guilty of negligence, and may be removed, and is also liable upon his bond. But I think it would be impracticable and unsafe in this action to inquire into the probable money value of the property mentioned in the inventory, and then charge the administrator personally with that sum, as money in his hands applicable to the payment of this claim. Upon an actual sale of the property, the amount realized might fall far short of this supposed value, to the irremediable loss of the administrator. Such money assets must also be at the time subject to be applied to the payment of the demand in question.

This action was commenced March 24, 1876—less than six months after the appointment of the defendant Nurse as administrator. Now, section 1140 of the Oregon Civil Code provides in effect that the county court, after the filing of the first semi-annual account of the administrator, shall "ascertain and determine if the estate be sufficient to satisfy the claims presented and allowed" by the administrator within the first six months after notice of his appointment, "after paying the funeral charges and expenses of administration," and shall then order and direct payment to be made in full, or pro rata, as the case may be.

From this it seems that even money in the hands of an administrator is not technically assets applicable to the payment of a claim, unless the county court in which the letters were granted has ascertained the fact and made an order to that effect.

This point was not made by counsel, and will therefore be considered waived. Yet it is stated to show that if the administrator is not authorized to pay any claim against the estate until directed by the county court, as provided in section 1140, supra, then section 1103, supra, ought not to be construed so as to charge him under any circumstances with assets in his hands applicable to the payment of a particular claim until its payment has been authorized and directed by the county.

But waiving the effect of this section (section 1140) had Nurse any money in his hands as administrator at the commencement of this action, applicable to the satisfaction of the plaintiff's demand? At the date of the letters he was solvent, and owed the estate $4,105.33. This sum it was his duty to collect from himself as debtor of the estate by transferring it to himself as administrator thereof. It is but reasonable to presume that this duty was duly performed, and that such sum was then, and still is, in his hands as administrator.

Was it then applicable to the payment of this claim? By section 3466 of the Revised Statutes, it is provided that whenever the estate of a deceased person in the hands of his administrator "is insufficient to pay all the debts due from the deceased, the debts due the United States shall be first satisfied." The language of this section is absolute. The debts due the United States are to be satisfied, to the exclusion of any other debt due from the deceased.

The constitutionality of this act, and that it gives no lien upon the property of the debtor, but only a priority of payment out of the proceeds of such property upon the debtor's dying insolvent, and therefore does not overreach or affect a bona fide transfer of the same, was settled by the supreme court in U. S. v. Fisher, 2 Cranch [6 U. S.] 390, 396.

It does not appear that the administrator had any notice of this claim prior to February 20, 1876, when it was presented to him and disallowed. At that time, according to the evidence he had paid out for expenses of Miller's last illness, $370; for funeral charges, $45, and for taxes on the estate, $40; in all, $455.

In U. S. v. Fisher, supra (note, p. 390), it was said by Chief Justice Marshall that the administrator is only liable to the extent of the assets in his hands, after notice of the claim of the United States; and in U. S. v. Clark [Case No. 14,807], it was held that the administrator is to be considered a trustee, and only liable after notice or the knowledge of such circumstances as would put a prudent man upon inquiry.

This being so, it follows that the adminis-trator is not personally liable to the plaintiff under section 3466, supra, for the assets which he had disbursed in good faith before notice of its claim.

The two items of taxes and funeral charges are "not debts due from the deceased," but charges imposed by the law of the state which the administrator is bound to discharge in the performance of his trust before satisfying any claim of the United States as a creditor of the deceased. The title to the property of this estate not being affected by section 4366, supra, and being therefore in the administrator, it is private property and subject to taxation by the state, and this charge is paramount and prior to any claim which the United States may have against the proceeds as creditor of the deceased.

In U. S. v. Hunter [Case No. 15,427], Mr. Justice Story held that the right of priority of the United States only attaches to what remains of a debt due to an insolvent debtor, or of his estate, after the proper charges and expenses of collecting, or administering it, as the case may be, are satisfied. Upon appeal to the supreme court, the decree in this case was affirmed without this question being mooted. [Hunter v. U. S.] 5 Pet. [30 U. S.] 173. The expenses of Miller's last illness are a "debt due from the deceased," and therefore the claim of the United States is entitled to a priority of payment. Waiving the question, because not made by counsel, whether this payment is to be considered as made in good faith because made without the order of the county court, as provided in section 1140, supra, it was otherwise duly made and without notice of the prior claim of the United States. Deduct then the sum of these payments from the $4,105.33 of assets presumed to be in the defendant's hands, and there is left $3,650.33.

In addition to this, there must be deducted the expenses of administration. These are, so far as appears, the compensation of the administrator and the fees of printers and officers. The administrator's ordinary compensation is "a commission upon the whole estate accounted for by him." Civ. Code Or. § 1146. For the purposes of this action, assuming that to be the sum due from the administrator to the deceased, and treating the rest of the estate as merely things in action, this commission amounts to $202.10. Add to this $100 for fees of printers and officers, and the remainder, $3,348.26, is the sum for which the plaintiff is entitled to a personal judgment against the defendant Nurse.

The defendant claimed in his evidence that the expenses of administration would amount to a much larger sum than this. The only item he mentioned was the expense of defending this action. But as this claim ought to have been allowed by him when presented, and this litigation thereby avoided, it is difficult to see on what ground he can be allowed anything on this account. If the estate is to pay the expenses of this litigation, the effect

will be that the United States maintains the administrator in his apparently improper resistance to the collection of its lawful claim.

The plaintiff is entitled to judgment against Nurse, as administrator, for $12,413.45, with interest on the same at the rate of ten per centum per annum from the adjustment of the accounts, December 15, 1875, until this date, and also against said Nurse, personally, for $3,348.23 of said sum, and the costs and expenses of this action.