## LIBERTY MUT. INS. CO. v. JOHNSON SHIPYARDS CORPORATION.[*]

(Circuit Court of Appeals, Second Circuit. April 24, 1925.)

No. 174.

**1. Receivers ⬤=153—Provision of Bankruptcy Act giving government priority for taxes held not to apply to equity receivership suit.**

Bankruptcy Act, § 64 (Comp. St. § 9648), providing that, in settling estates in bankruptcy, taxes due and owing by bankrupt to United States, state, county, district, or municipality shall be paid in advance of dividends to creditors, does not apply to question whether United States has priority for taxes in equity receivership suit.

**2. Receivers ⬤=153 — Statute giving United States priority as creditor held not to apply, so as to give priority for income and excess profits taxes, in equity receivership suit.**

Rev. St. § 3466 (Comp. St. § 6372), providing that, if debtor of United States is insolvent, or if deceased debtor's estate is insolvent, United States shall have priority, does not apply, so as to give United States priority for money due on income taxes and excess profits taxes in equity receivership suit.

**3. United States ⬤=76—Right of United States to priority in payment of debts depends exclusively on statute.**

Right of United States to priority in payment of debts depends exclusively on statute.

**4. Taxation ⬤=1—"Debt" defined and distinguished from "taxes."**

A "debt" is a sum of money due on contract, express or implied, or one which is evidenced by judgment; and "taxes" are not debts, but imposts levied by government for its support, or for some special purpose which the government has recognized, and are due to government in its sovereign capacity, while debts are due to government in its corporate capacity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt; Tax—Taxation.]

*Certiorari granted Stripe v. United States, 45 S. Ct. 640, 69 L. Ed. —.

**5. Receivers ⬅153—United States government, as attribute of sovereignty, has priority for payment of income and excess profits taxes in equity receivership suit.**

United States government has priority over unsecured claims of general creditors for payment of income and excess profits taxes in equity receivership suit; such right being attribute of its sovereignty rather than dependent on Act July 13, 1866, § 9, or act March 4, 1913 (Comp. St. § 5908), relating to tax liens.

**6. United States ⬅125—No suit or action can be brought against United States, except by consent.**

No suit or action can be brought against the United States, unless act of Congress has provided otherwise.

**7. Limitation of actions ⬅11(1) — Limitation does not run against United States government.**

Limitation of actions does not run against United States government, unless Congress has by statute provided for such limitation.

**8. United States ⬅5—United States has all attributes of sovereignty, except as deprived by restrictions of Constitution.**

United States, as sovereign nation, has all attributes of sovereignty, except as deprived by restrictions expressed in, or which arise from, Constitution.

Appeal from the District Court of the United States for the Southern District of New York.

Equity receivership suit by the Liberty Mutual Insurance Company against the Johnson Shipyards Corporation, in which receivers were appointed, and the United States and others filed claims. From an order (300 F. 952) awarding to the United States priority of payment of claims, other creditors appeal. Order affirmed.

This action was begun as an ordinary conservation suit in equity, and receivers of the defendant were appointed therein. The United States filed claim with the receivers for income and excess profits taxes for the years 1917 to 1920, and also claimed to be entitled to priority of payment thereon. The matter was referred to a special master, who reported that the defendant was indebted to the United States in the sum of $3,931.99 for taxes, but denied that the United States was entitled to a priority in the payment thereof over general creditors.

No exceptions were taken to his report, so far as the amount of the claim was concerned. But exceptions were taken to his denial of the right of the United States to priority of payment out of the assets of the estate. The District Judge sustained the exceptions taken to the report, and awarded to the United States priority of payment in an

6 F.(2d)—48

order entered on August 4, 1924. An appeal to this court was thereupon taken.

Rothwell, Harper & Matthews, of New York City (Harold Harper, of New York City, of counsel), for appellants.

Wm. Hayward, U. S. Atty., of New York City (Thomas J. Crawford and John Holley Clark, Jr., Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The only question which this case raises is whether the United States, in an equity receivership suit, is entitled to priority of payment over the unsecured claims of general creditors, for its claim to income and excess profits taxes. In the court below the right of the United States to such priority, under the circumstances stated, was sustained. The appellants, in bringing the case into this court, contend that the claim of the United States for taxes is merely a general claim against the estate, and that the United States is entitled only to share pro rata with the general creditors in obtaining the payment of a claim for taxes.

[1] Bankruptcy Act, § 64 (Comp. St. § 9648), providing for the settlement of estates in bankruptcy, directs that there shall first be paid "all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors." But that statute has no application to the facts of this case, which is not a proceeding in the bankruptcy courts for the settlement of a bankrupt's estate.

[2] And section 3466 of the Revised Statutes (Comp. St. § 6372) provides as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

This section does not apply unless it appears that the debtor's property is insuffi-

cient to pay all his debts (United States v. State of Oklahoma, 261 U. S. 253, 259, 43 S. Ct. 295, 67 L. Ed. 638), and unless, in addition, particular acts, required by the section as evidencing such insolvency, are shown (Strain v. United States Fidelity & Guaranty Co. [C. C. A.] 292 F. 694, affirmed by United States Supreme Court, 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854). But section 3466 relates only to the payment of "debts," and, as we shall see, taxes are not debts. Moreover, we are not now dealing with an insolvent debtor, nor the estate of a deceased debtor, nor of a debtor who has made a voluntary assignment, nor the estate of an absconding, concealed, or absent debtor. So that section 3466 clearly has no application to the pending case.

It is said that the question involved is controlled by the decision of this court in Equitable Trust Co. v. Connecticut Brass & Manufacturing Corporation, 290 F. 712. The government in that case had intervened in an equity suit similar in character to this one, and asserted a claim approximately for $350,000 damages for conversion of copper supplied to the defendant under a contract for the manufacture of war munitions, and also claimed priority of payment out of the assets in the hands of the receivers. The claim for priority was based on the provisions of section 3466 of the Revised Statutes. This court denied the right to the priority on the ground that the right of the United States to priority in the payment of debts was statutory, and that section 3466, which provided for the priority of payment of government debts under prescribed conditions, had no application to the case of the distribution of the assets of an equity receivership. The court said:

"We think the decisions of the Supreme Court, extending over a period of more than 100 years, have clearly established the law that the right of the United States to priority of payment is statutory, and does not apply while the debtor continues the owner of the property, even though he is unable to pay his debts. No evidence can be received of the insolvency of a living debtor until he has been divested of his property by making a voluntary assignment thereof, or has committed an act of bankruptcy, or his effects have been attached by process of law on the ground that he is an absconding, concealed, or absent debtor."

In that case we were dealing with the right of the United States to a priority in the payment of a debt due to it. We thought that whatever right to a priority the United States possessed, respecting the payment of debts, was statutory, and did not exist independently of statute. The subject has been regulated by statute, so far as the government of the United States is concerned, from the days of the First Congress to the present.

[3] That the right of the United States to priority in the payment of debts depends exclusively upon statute seems to be established law from several decisions, to which we shall briefly refer. In United States v. Oklahoma, 261 U. S. 253, 259, 43 S. Ct. 295, 297 (67 L. Ed. 638), the court stated:

"The claim of the United States to the asserted priority rests exclusively upon the statute."

In United States v. Fisher, 2 Cranch, 358, 396, 2 L. Ed. 304, the court, speaking through Chief Justice Marshall in 1805, said:

"In the case at bar, the preference claimed by the United States is not prohibited; but it has been truly said that, under a Constitution conferring specific powers, the power contended for must be granted, or it cannot be exercised."

In that case the court held that in all cases of insolvency or bankruptcy of a debtor of the United States the government was entitled to priority of payment. The question did not relate to the collection of a tax but to the right of the United States as the holder of a protested bill of exchange to a preference over general creditors where the debtor became a bankrupt. The right to priority of payment was rested upon an act of Congress and not upon any doctrine of sovereignty.

In United States v. Bank of North Carolina, 6 Pet. 29, 35, 8 L. Ed. 308, Mr. Justice Story in 1832, writing for the court, said:

"The right of priority of payment of debts due to the government is a prerogative of the crown, well known to the common law. It is founded, not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal prerogative may be clearly traced in these statutes; and, as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they

ought to receive a fair and reasonable interpretation, according to the just import of their terms."

In United States v. Canal Bank, 25 Fed. Cas. pages 277, 278, 3 Story, 79, Mr. Justice Story, sitting in the Circuit Court in 1844, and after calling attention to the fact that several questions were involved, said:

"In the first place, whether the United States have any priority, or privilege, in respect to the debts due to them by their debtors, over the debts due to private persons, so as to entitle them to a prior satisfaction, upon any judgments obtained against their debtors, out of the property attached, before other attaching creditors, whose attachments are of an earlier date. * * * It has long since been settled, by the solemn adjudications of the Supreme Court, that the United States do not possess any general right of priority or privilege over private creditors, for the satisfaction of the debts due to them, founded upon any general prerogative, belonging to the government in its sovereign capacity, but that all the priority or privilege, which the government is at liberty to assert, is or must be founded upon some statute, passed by Congress, in virtue of its constitutional authority. This was expressly so held in U. S. v. Fisher, 2 Cranch (6 U. S.), 358, 396 [2 L. Ed. 304], and the doctrine has ever since been strictly adhered to. U. S. v. Hooe, 3 Cranch (7 U. S.) 73 [2 L. Ed. 370]; Prince v. Bartlett, 8 Cranch (12 U. S.) 431 [3 L. Ed. 614]; Thelusson v. Smith, 2 Wheat. (15 U. S.) 396 [4 L. Ed. 271]; U. S. v. Howland, 4 Wheat. (17 U. S.) 108 [4 L. Ed. 526]; Conard v. Atlantic Ins. Co., 1 Pet. (26 U. S.) 387 [7 L. Ed. 189]. It is not here, as it is in England, where the sovereign is entitled, in virtue of his prerogative, to a priority over private creditors, for satisfaction of the debts due to the crown. Com. Dig. 'Prerogative,' D. 86; Id. 'Debt,' G. 8, G. 9."

It is quite another question whether the United States is entitled to priority in enforcing the payment of a claim for taxes. If any such priority exists, it plainly does not rest upon statute, for there is no legislation by Congress upon that subject, and never has been any, except to create a lien, as hereinafter appears.

[4] Before we proceed further with a consideration of the question presented, it may be well to point out that a fundamental distinction exists between debts and taxes. They are two very distinct matters. A debt is not a tax, and a tax is not a debt. Debts are due to the government in its corporate capacity. Taxes are due to it in its sovereign capacity. A debt is a sum of money due upon contract, express or implied, or one which is evidenced by a judgment. Taxes are imposts levied by government for its support, or for some special purpose which the government has recognized. Meriwether v. Garrett, 102 U. S. 513, 514, 26 L. Ed. 197; Lane County v. Oregon, 7 Wall. 71, 79, 19 L. Ed. 101.

In Peirce v. City of Boston, 3 Metc. 520, a statute of Massachusetts allowed mutual debts to be set off, and the defendant attempted to set off against a demand of the plaintiff certain taxes due to the city. The court did not regard taxes as debts.

In City of Camden v. Allen, 26 N. J. Law, 398, the court said:

"A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects, for the support of the state. It is not founded on contract or agreement. It operates in invitum. * * * A debt is a sum of money due by certain and express agreement. It originates in and is founded upon contract express or implied."

And see, to the same effect, United States v. Eggleston, 4 Sawy. 199, 25 Fed. Cas. 979, No. 15,027; Crabtree v. Madden, 54 F. 426, 4 C. C. A. 408; United States v. McHatton (D. C.) 266 F. 602; People v. Dummer, 274 Ill. 637, 643, 113 N. E. 934.

In McCulloch v. State of Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579, Chief Justice Marshall pointed out that the power to tax is essential to the very existence of government. "It is obvious," he said, "that it is an incident of sovereignty, and is coextensive with that to which it is an incident."

In United States v. Bennett, 232 U. S. 299, 306, 34 S. Ct. 433, 437 (58 L. Ed. 612), Chief Justice White, alluding to the limitations upon the power of the states to tax, says that they afford no ground for constructing an imaginary constitutional barrier around the exterior confines of the United States, "for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty."

And in the recent case of Cook v. Tait, 265 U. S. 47, 56, 44 S. Ct. 444, 68 L. Ed. 895, the court quotes approvingly the statement made by Chief Justice White in the case of United States v. Bennett, supra.

In Cooley on Taxation (4th Ed.) vol. 1, § 57, that eminent authority said:

"The power of taxation is an essential and

an inherent attribute of sovereignty, belonging as a matter of right to every independent government. It is possessed by the government, without being expressly conferred by the people. The power is inherent in the people, because the sustenance of the government requires contributions from them. * * * Constitutional provisions relating to the power of taxation do not operate as grants of the power of taxation to the government, but instead merely constitute limitations upon a power which would otherwise be practically without limit."

In Blackstone's Commentaries (Lewis' Ed.), vol. 3, p. 160, note 37, it is said:

"The authorities are overwhelmingly in favor of the conclusion that taxes are not debts, in the sense that they are liabilities arising out of contracts, express or implied, and in the true sense are not debts at all, but are the enforced proportional contribution of each citizen and of his estate, levied by authority of the state, for all public needs; that they owe their existence to the action of the legislative power, and do not depend for their validity and enforcement upon the individual assent of the taxpayer, but operate in invitum."

Congress by the Act of July 13, 1866, c. 184, § 9, p. 107, declared that "if any person, * * * liable to pay any tax, shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due until paid. * * *"

The Act of March 4, 1913, c. 166, 37 Stat. pt. 1, p. 1016 (Comp. St. § 5908), makes the lien run from the time when the assessment list is received by the collector, and the statute provides that the lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the District Court of the district within which the property subject to such lien is situated.

[5] It has frequently been pointed out that a tax lawfully imposed is not to be regarded as an ordinary debt, but is an obligation which is to be regarded as paramount to all other demands, although the law imposing the tax does not expressly provide that it is to have priority. These cases proceed upon the theory that the maintenance of the government and the public welfare are so dependent upon the collection of taxes that payment should have precedence over all other claims; and it is thought that taxes levied for the support of government are founded upon a higher obligation than other demands.

See State of Minnesota v. Central Trust Co., 94 F. 244, 247, 248, 36 C. C. A. 214, and cases there cited.

The courts have sustained in numerous cases the right to priority of payment of taxes over all other claims. State of Minnesota v. Central Trust Co. of N. Y., supra; Burleigh v. Chehalis County (C. C.) 75 F. 873; George v. St. Louis Cable & Western R. Co. (C. C.) 44 F. 117; Coy v. Title Guarantee & Trust Co., 220 F. 90, 135 C. C. A. 658, L. R. A. 1915E, 211; Davis v. Pullen (C. C. A.) 277 F. 650; Greeley v. Provident Savings Bank, 98 Mo. 458, 11 S. W. 980; State v. Rowse, 49 Mo. 586; Jack v. Weiennett, 115 Ill. 105, 3 N. E. 445, 56 Am. Rep. 129; State v. Harris, 2 Bailey (S. C.) 598; Butler v. Baily, 2 Bay (S. C.) 244, 249. But these cases relate to the right of a state to priority of payment of a state tax, which is to be distinguished from the right of the United States to a similar priority, possibly in the fact that the states have a common law while it has often been said by the Supreme Court that the United States has no common law.

However, instances are numerous in which the common-law prerogatives of the sovereign have been held applicable to the United States in its sovereign capacity. To a few of these we shall refer.

The prerogative of the crown of England had its origin in a maxim of the common law: "Quando jus domini regis et subditi concurrent, jus regis præferri debet."

[6] No suit or action could be brought against the king, even in a civil action. 1 Blackstone's Com. 242. The same principle exists as respects the bringing of actions against the United States, where no act of Congress has provided otherwise.

In United States v. Clarke, 8 Pet. 436, 444, 8 L. Ed. 1001, Chief Justice Marshall, in 1834, said:

"As the United States are not suable of common right, the party who institutes such suit must bring his case within the authority of some act of Congress, or the court cannot exercise jurisdiction over it."

And in The Siren, 7 Wall. 152, 154, 19 L. Ed. 129, the Supreme Court said in 1868:

"It is a familiar doctrine of the common law that the sovereign cannot be sued in his own courts without his consent. The doctrine rests upon reasons of public policy; the inconvenience and danger which would follow from any different rule. It is obvious that the public service would be hindered, and the public safety endangered, if the supreme authority could be subjected to suit at

the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government. The exemption from direct suit is therefore without exception. This doctrine of the common law is equally applicable to the supreme authority of the nation, the United States. They cannot be subjected to legal proceedings at law or in equity without their consent, and whoever institutes such proceedings must bring his case within the authority of some act of Congress."

[7] It is an ancient maxim of the common law, "Nullum tempus occurrit regi." It is a part of the prerogative of the sovereign. And Blackstone states that it is the standing maxim upon all occasions. 1 Commentaries, 247. The same principle is applicable to the United States. The question was before the Supreme Court in United States v. Nashville, Chattanooga, etc., R. Co., 118 U. S. 120, 125, 6 S. Ct. 1006, 1008 (30 L. Ed. 81) where Mr. Justice Gray said:

"It is settled beyond doubt or controversy —upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided—that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound. Lindsey v. Miller, 6 Pet. 666 [8 L. Ed. 538]; United States v. Knight, 14 Pet. 301, 315 [10 L. Ed. 465]; Gibson v. Chouteau, 13 Wall. 92 [20 L. Ed. 534]; United States v. Thompson, 98 U. S. 486 [25 L. Ed. 194]; Fink v. O'Neil, 106 U. S. 272, 281 [1 S. Ct. 325, 27 L. Ed. 196]."

A legislative act did not bind the king, unless he was expressly named therein. 1 Blackstone's Com. p. 262.

In Dollar Sav. Bank v. United States, 19 Wall. 227, 239, 22 L. Ed. 80, the Supreme Court said:

"It is a familiar principle that the king is not bound by any act of Parliament, unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests. He may even take the benefit of any particular act, though not named. The rule thus settled respecting the British crown is equally applicable to this government, and it has

been applied frequently in the different states, and practically in the federal courts. It may be considered as settled that so much of the royal prerogatives as belonged to the king in his capacity of parens patriæ, or universal trustee, enters as much into our political state as it does into the principles of the British Constitution."

The king (and any person suing to his use) shall neither pay nor receive costs. 3 Blackstone, Commentaries, 400. The privilege that he was not to pay costs was a part of his prerogative. In United States v. Hooe, 3 Cranch, 73, 92, 2 L. Ed. 370, the Supreme Court held in 1805 that costs could not be charged against the United States. And in 1817 in United States v. Barker, 2 Wheat. 395, 4 L. Ed. 271, Chief Justice Marshall rendered the decision of the Supreme Court, the whole of which follows: "The United States never pay costs." And see The Antelope, 12 Wheat. 546, 6 L. Ed. 723; United States v. Ringgold, 8 Pet. 150, 8 L. Ed. 899; United States v. Boyd, 5 How. 29, 12 L. Ed. 36.

The principles laid down in the above cases are readily understood, if the doctrine announced in Dollar Savings Bank v. United States, supra, hereinbefore quoted, is adhered to, viz. that so much of the royal prerogatives as belonged to the king in his capacity of parens patriæ is as much a part of the national government as it is a part of the British Constitution. Applying that principle to the facts herein involved, we must sustain the right of the United States to priority of payment of the taxes.

The king and the prerogatives personal to him, being repugnant to the Constitution, are no doubt abrogated. However, the prerogatives he possessed, in so far as they pertain to civil government, and so far as they are not in conflict with the provisions of the Constitution, survive and may be asserted by the United States. See Matter of Carnegie Trust Co., 206 N. Y. 390, 397, 99 N. E. 1096, 46 L. R. A. (N. S.) 260. As this court said in Matter of Finkelstein, 298 F. 11, 16, there is no doubt that the right of priority of the United States in the collection of taxes is an attribute of sovereignty.

[8] We are of opinion that the United States, as a sovereign nation, is clothed with all the attributes of sovereignty, except in so far as it is deprived of them by restrictions expressed in or which arise from the Constitution. And we think that, independently of any specific statutory provision, the United States in its capacity as a sovereign is entitled to a priority in the payment of

taxes over unsecured creditors; such priority being possessed by it as a prerogative right. The United States being a nation, its sovereignty extends to all persons within its boundaries, and to the property of such persons, even though such property is in the hands of an equity receivership.

Order affirmed.

HAND, Circuit Judge (concurring). I agree with Judge ROGERS' opinion, except in one particular. It seems to me unnecessary to accept as authoritative what was said by Justice Strong, obiter, in Dollar Savings Bank v. United States, 19 Wall. 227, 239, 22 L. Ed. 80; that is, that the United States has all the prerogatives of the British crown as parens patriæ. A tax is an exaction imposed by the sovereign for its own purposes, which we should assume to be of an importance paramount to the rights of an individual. Besides, it does not presuppose, like a debt, any voluntary acceptance of the hazard of the taxpayer's continued solvency. Perhaps it is easier to deduce the priority from such considerations than to establish it by precedent. In any case the result does not appear to me to require us to accept as law the language cited, and I should think it quite possible that the implied prerogatives of a republic against its citizens may not go so far. The prerogatives of the British crown depend upon traditions and conceptions in some respects alien to those popular at the end of the eighteenth century and since. Whatever may be the final upshot, it seems to me unnecessary for the present to go further than the facts at bar, or to say more than that the nature of a tax gives it, independently of statute, priority to debts due individuals, certainly to such as sound in contract, and these are all we have now to consider.