✦McCoy, as Administrator, v. Allen et al.

DEBTOR AS ADMINISTRATOR—EFFECT OF INSOLVENCY—WHEN APPOINTED.

When the debtor of a deceased person is appointed administrator, the debt should be included in the inventory, and becomes assets in the hands of the administrator, for which he is accountable as such; but, on exception to his final account, claiming that he has omitted to charge himself with the amount of such debt as so much money in his hands, if it appear to the court that he was insolvent at the time of his appointment, and has continued so during the whole period of his administratorship, he should not be held accountable for the amount of such debt.

SUMMERS, J.

The defendants are the distributees of the estate of one Allen, of which the plaintiff is the administrator. McCoy, at the time of his appointment, was indebted to the estate in the sum of $1,469.98, and was and still is insolvent. Exceptions to his final account were filed in the probate court, among others that he had not charged himself with the said sum as so much money received by him as such administrator. The probate court found that he was insolvent, and overruled the exception; the matter was appealed to the court of common pleas, which, while it found that the debt could not, subsequently to his appointment, have been collected from him, held, as matter of law, upon the facts found, that his insolvency made no difference, and that he must charge himself with the debt and account for the amount due thereon as so much money received by him as such administrator. To this holding McCoy excepted, and prosecutes error to this court.

The precise question presented has not been decided by our supreme court, but we would not have had much difficulty in determining it upon the reasoning in *Brown* v. *Harshman's Executors*, 6 Ohio Circ. Dec., 10, had not the holding in that case been repudiated in the opinion in *Perkins*, v. *Scott* 6 Ohio Circ. Dec., 226.

In *Brown* v. *Harshman's Executors*, it was held that while a claim, due from one of two joint executors, who was insolvent, ought to be included in the inventory as required by section 6069, Revised Statutes, yet the executors would not be held liable for the same as for so much money in their hands; while in *Perkins* v. *Scott* it was held that "The sureties upon an administrator's bond are liable for the debt of the administrator, due the decedent, regardless of the solvency or insolvency of said administrator." While this holding in *Perkins* v. *Scott* is a mere dictum, to which Judge DAY dissented, yet we have thought it best, while approving the decision in *Brown* v. *Harshman's Executors*, not to rest our decision upon the reasoning in the opinion in that case, but upon a re-examination of the whole matter.

We think the above holding in *Perkins* v. *Scott* is a dictum, first, because that was a suit brought against the administrator and the sureties upon his bond, and, the debt due from the administrator to the decedent having been determined by the probate court, upon the hearing of the final account of the administrator, no appeal having been taken or error prosecuted, the court held that in the absence of fraud or collusion the determination of the probate court was final, and also binding upon the sureties, and this disposed of the case; second, because the court found as matter of fact, that the administrator was solvent, so that, had the case been one that was not already concluded by the determination of the probate court, no question arose as to the duty of an insolvent debtor, who had been appointed administrator of the estate of his creditor, to charge

*The judgment in this case w s reve sed by the Supreme Court, and the judgment of the common pleas affirmed on author ty of 51 O. S., 487, unreported in 57 O S , 641. The circuit decision is cited in 54 O. S., 487, 497

himself in his final account with the amount of his debt as so much money in his hands, or as to the liability of his sureties.

The question is whether a debtor, who has been appointed administrator of the estate of his creditor, should be required to charge himself in the settlement of his account with the amount of his debt as so much money received by him as such administrator when he was insolvent at the time of his appointment, and so continues.

The case of *Tracy* v. *Card*, 2 Ohio St., 431, is relied upon in support of the decision in *Perkins* v. *Scott*, and while we concede that the holding in that case that "An appointment as executor or administrator does not extinguish the debt of the executor or administrator to the estate of his testator or intestate. Nor was such extinguishment the consequence of such appointment, in Ohio, even before the provision of our statute on that subject. The debt became assets in the hands of the administrator or executor, for which he was accountable, as such, and for which judgment might be had against him, in a proceeding by an administrator *de bonis non*," is a correct statement of the law of this state, it does not follow that the rule is without exception.

In *Bigelow* v. *Bigelow*, 4 Ohio, 138, it was held: "When the obligor in a bond becomes administrator of the obligee, the bond is suspended, and the debt due becomes assets in the hands of the debtor as administrator."

This is the leading case in this state, and many of the statements in the opinion are, in subsequent opinions, cited as principles established by that decision. An examination of the case shows that in 1815 Oliver Bigelow agreed in writing to convey some land to Elihu Bigelow for certain sums, which Elihu agreed to pay. Oliver died, and Elihu was appointed his administrator; in the inventory he represented that there was one hundred and eighty dollars due on the agreement, and while acting as administrator he petitioned the court for specific performance of the contract, alleging that the whole purchase money had been paid. A will was afterwards found, and the executor sued Elihu on the contract, and the supreme court held that the record of the proceedings for specific performance in which it was alleged that the purchase money had been paid, was conclusive against the right to recover in the action, and we do not think the case is authority on any other point.

The next case is that of *Hall* v. *Pratt*, 5 Ohio, 73, which holds that "Where a creditor is appointed administrator to his debtor, and dies without receiving assets, it is not to be assumed that the debt was paid, nor is it extinguished."

Statements in the opinion of this case are cited in subsequent cases in the same way as those from *Bigelow* v. *Bigelow;* and Peck, J., in *Rossman* v. *McFarland*, 9 Ohio St., 369, in which case it was held that "The case of *Bigelow* v. *Bigelow*, 4 Ohio, 138, does not apply to cases of joint and several notes, where only one of the makers becomes trustee to a payee," says of the Bigelow case, "The authority of this case is somewhat shaken and its practical application limited, in the subsequent cases of *Hall* v. *Pratt*, 5 Ohio, 72, and *Miller* v. *Donaldson*, 17 Ohio, 265. In *Hall* v. *Pratt*, Wright, J., dissents from much of the reasoning and especially questions the universality of the maxim that personal actions once suspended are always suspended; while in *Miller* v. *Donaldson*, Avery, J., remarks, that the holding the debt in such case to be assets in the hands of an administrator, is a mere fiction of law which cannot be allowed to work injustice. In that case a mortgagor who had been qualified and had acted as executor of the mortgagee, had failed to pay the debt while in office, and the court permitted a foreclosure of the mortgage after his removal, at the suit of an administrator *de bonis non*, thus showing clearly that the debt was not discharged by his appointment to and acceptance of the trust, and was not, in equity, at least, to be regarded as paid."

The case of *Tracy* v. *Card*, 2 Ohio St., 431, we have already noticed. The next case is *Shields* v. *Odell*, 27 Ohio St., 398, which holds: "The principle that the appointment of a debtor as administrator converts the debt into assets in his

hands to be accounted for, does not apply to one who is only conditionally liable to the estate;" and in this case WRIGHT, J., also reviews the Ohio cases, and says: "We can see that in many cases where a debtor is appointed administrator there is no harm in considering the debt paid and in his hands for distribution, that is, as far as he is concerned. But as regards the liabilities of others to the estate, a different rule may exist."

In *Campbell* v. *Johnson*, 41 Ohio St., 589, it was held that an answer stated a good defense which averred that the surety on the administrator's bond sued on, was induced by the fraudulent representations of the sole owner of the estate, to sign the bond in order to make him liable for the administrator's otherwise worthless debt.

In *Martin* v. *Train*, 3 O. C. D., 344, it was held where the debtor was appointed administrator *de bonis non* that the debt became assets in his hands, although created after the death of the testator.

This examination of the Ohio cases, and the foregoing are all having any bearing on the matter, that have come to our attention, shows that the question under consideration has not yet been decided in this state.

In *Baucus* v. *Stover*, 89 N. Y., 1, the judgment of the supreme court (24 Hun., 109) was reversed, the courts saying: "At the time of the death of the testator, Barr (one of the executors of the will) was utterly insolvent, and he has ever since remained so, and has been unable to pay any part of the balance due from him upon the note (Barr's note upon which he owed the testator at the time of his death about $4,000). Upon the accounting before the surrogate the creditors claimed that Barr should account for the balance due upon the note as so much money in his hands under the following provision of the Revised Statutes (2 Rev. Stat., 84, section 13): 'The naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased in the inventory, and such executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due, and he shall apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal estate of the deceased.' The surrogate held that Barr was not liable to account for this balance as so much money in his hands, and his decision was affirmed by the general term. We are of the opinion that the court below erred. And the court held, although insolvent at the time of his appointment, he was bound to account for the debt, and that he should be charged therewith on settlement of his accounts as for so much money in his hands." (MILLER and FINCH, JJ., dissenting.)

The court explicitly stated that they were not called upon to determine and did not determine whether Barr's sureties could be held for this debt as so much money actually received by him. Afterwards a creditor of Stover sued Barr and the sureties upon his bond, and the supreme court of New York, in *Baucus* v. *Barr*, 45 Hun., 582, held that the sureties were not liable. "That the provisions of the statute declaring that a debt due from an executor to the estate should be treated, in the rendering of his account, as money in hand, must be construed with reference to the ordinary obligation, which imposed on him only diligent, faithful, honest action touching the administration of the estate committed to his charge.

"That the sureties did not by their bond guarantee the payment of his debt by the executor to the estate, but only guaranteed obedience by the executor to all orders of the surrogate touching the administration of the estate committed to him."

And the judgment on appeal to the court of appeals was affirmed by that court (107 N. Y., 624), on the opinion of the special and general term in the above case.

We think the opinions of the supreme court supported by the better reasons, and that the court of appeals would have done better to affirm the holding in *Baucus* v. *Stover*, 24 Hun., 109, that "Although * * * an executor must include a debt due from him to his testator, in the inventory, and is, upon the final accounting, *prima facie* to be held liable therefor, as for so much money in his hands at the time the debt became due, yet the presumption of solvency created by the statute may be rebutted and the executor may show an honest inability to pay the debt continuing during the whole period of his executorship"—than to hold, as it does in the above case, in 89 N. Y., 1, that "An executor, although insolvent at the time of his appointment, is bound to account for a debt so due from him, and should be charged therewith on settlement of his accounts as for so much money in his hands;" and then to so limit its decision, by further holding that the executor, if insolvent, could not be attached and punished for contempt in not complying with an order of the surrogate to apply the money which he was charged with having in his hands in payment of his debt, in payment of debts of the estate, etc., and that he would not be guilty of embezzlement, and further that his sureties would not be liable, as to make it practically come to the same end as the decision overruled.

MILLER, J., in his dissenting opinion, 89 N. Y., 9, says: "In principle no reason exists why an executor should be held to any other or different obligation in regard to a debt due from him, than he should in regard to any other assets which may come into his hands. No stricter rule should be imposed in his own case than in any other. Primarily, it is presumed that his debts are paid to the estate, and that he has the money to distribute. But this, as in the case of any other demand, is open to inquiry and investigation; and he has a right to show that he was, and is, insolvent and unable to meet his obligation. The statute was not intended to embrace a case where the debt was worthless, and there was an utter inability to pay the same. Any other or different construction would place an insolvent executor in a most unfortunate position. The debt he owes, which was of an ordinary character, would be converted into one for which he would be liable to arrest and imprisonment, and by virtue of the statute he would become an embezzler of moneys which he had never collected or received as executor, and which he would have been unable by any diligence, effort or means within his power to obtain. While guilty of no wrong, he would still be liable to be punished and treated as a wrong doer and a criminal."

And further, that "the statute never could have been intended to convert a worthless debt into a demand, the payment of which might be enforced by imprisonment, and by making sureties liable who never intended or expected to assume any such obligation, and who were not understood to assume it at the time they became sureties."

In *Lynch* v. *Dwain*, 66 Wis., 490, it is said: "If it is an administrator's duty to inventory a claim against himself, still it does not conclude him, much less his sureties."

In *McCarthy* v. *Frazer*, 62 Mo., 263, it is said: "Even had the legislature, in express terms, provided that debts due to the testator by the executor should be money in his hands, the deduction would not follow whereby worthless assets are transmuted into cash, unless, indeed, the creative faculty can be accorded to our law makers, or the touch of Midas to their enactments."

And in *Scott* v. *Govenor*, 1 Mo., 686, "That the security of an administrator, as such, does not, by the act of joining in the execution of the administration bond, become security for the debts previously due from the administrator to the intestate."

In *Rader* v. *Yeargin*, 85 Tenn., 199, the court say: "The surety on an administrator's bond does not thereby become surety on s note in favor of the estate." See also *U. S.* v. *Eggleston*, 4 Saw., 199; 16 Buᴜ., 392; *Lyon* v. *Osgood*, 51 Vt., 707; *Condit* v. *Winslow*, 106 Ind., 142; *Potter* v. *Pitcomb*, 7 Me., 302; *Gay* v. *Grant*, 101 N. C., 206; *Hooper* v. *Hooper*, 32 W. Va., 526.

It will be found by comparison that section 6069, Rev. Stat., is a literal copy of the New York statute.

At common law the appointment by a testator of his debtor to be his executor operated as a release or extinguishment of the debt. Williams on Executors (6th Am. ed.), page 1310. However, "As between the debtor executor and the creditors of the testator, this doctrine is applicable only in cases where there are assets sufficient to satisfy the testator's debts. For it would be unfair to defraud the creditors of their just debts by a release which is absolutely voluntary, and therefore the debt due from the executor shall be considered on their behalf as assets in his hands." *Id.*, page 1314.

The debt due from an administrator to his intestate was also considered assets in his hands.

On the other hand, where a creditor was appointed executor or administrator of his debtor, he had a right to retain for his own debt due to him from the deceased, in preference to all other creditors of equal degree. "This remedy arises from the mere operation of law, on the ground that it were absurd and incongruous that he should sue himself or that the same hand should at once pay and receive the same debt." Williams on Ex'rs, 1040.

The rule that the debtor executor or administrator had paid to himself as executor or administrator his debt to the estate, and, on the other hand, that the creditor, executor or administrator had as such paid to himself the debt of the estate to him, was a mere fiction or presumption resorted to from necessity or convenience.

This presumption of payment, however, rested upon the supposition that the executor or administrator had assets which he might retain in payment of his debt, and did not apply in cases where there were no assets. Williams on Ex'rs, 1317; *Hall* v. *Pratt*, 5 Ohio, 73.

So if the debtor executor or administrator is insolvent at the time of his appointment, and so continues, the reason of the rule ceases just as clearly, and there is no presumption that the amount of his debt is in his hands as executor or administrator as so much money.

It is said by RAPALLO, J., in *Soverhill* v. *Suydam*, 5 N. Y., 140, that the statute, of which, as heretofore stated, section 6069 of our Revised Statutes is a copy, was intended to and did abolish the common law rule that the appointment by a creditor of his debtor as executor of his will operated as a release, and that the statute was enacted in order to obviate the incongruity of requiring the executor to proceed against himself for the collection of the debt. While THURMAN, J., in *Tracy* v. *Card*, 2 Ohio St., 431, 450, says of our statute, now section 6069, that it introduced no new rule, but only embodied the previous law in the form of a statute. But in either view, whether we regard the first part of the section as abolishing the common law rule, or, the courts already having rejected it, as embodying the law in the form of a statute, it is evident that the latter part of the statute adopts the common law rule or fiction, in cases where the debt was held not to be released, but to be assets; that the debt of the executor to his decedent had been paid by himself to himself as executor, and that it was to be considered as so much money in his hands as such executor. It follows, therefore, that debts of solvent executors only fall within the purview of the section, for as to such only did any reason exist in the common law rule.

If, on the other hand, the object was, as stated by RAPALLO, J., to obviate the incongruity of requiring the executor to proceed against himself for the collection of the debt, then it is equally clear that the section applies to solvent executors only, for the law makers must have assumed that a suit, if he could have sued himself, would result in converting the amount of the debt into money in his hands as executor.

Section 6069 provides that the claim of the testator against the executor shall be included in the inventory, and section 6181 provides that "No executor or administrator shall be accountable for any debts inventoried as due to the de-

ceased, if it shall appear to the court that they remain uncollected without his fault." These sections were part of the same act. The debt of the executor to his testator is not excepted from the provisions of the latter, but is covered by it, so that our construction of the former is supported by the provisions of the latter; for a different construction raises a conflict between the two.

It may not be out of place here to remark, while we have been considering the matter as though the same rule applied to the debt of an administrator as to that of an executor, that section 6069 does not in terms apply to debts of administrators, and that there is no section which does so apply.

In Raab's Estate, 16 Ohio St., 274, it was held that on exception to the final account of an administrator, claiming that he had omitted to charge himself with the amount of his debt, the court may hear evidence and determine the validity of such claim and the amount of such debt. We think, if on such hearing, it should appear to the court that he was insolvent and unable to pay the debt at the time of his appointment, and so continued during the whole time of his administratorship, that he should not be required to charge himself in settlement of his accounts with the amount of such debt.

It is doubtful if any debtor ever qualified as an administrator with the knowledge that a failure to pay his debt to the decedent would make him an embezzler, or that any man ever signed his bond knowing that he was making himself a surety as well as bondsman.

The construction we contend for will not lessen an honest man's respect for the law and the administration of justice, while the other can hardly fail to persuade him of the truth of Charles Macklin's observation that "the law is a sort of hocus-pocus science, that smiles in your face while it picks your pockets; and the glorious uncertainty of it is of mair use to the profession than the justice of it." The judgment of the court of common pleas will be reversed, and judgment rendered for the plaintiff.

*Harper & Harper*, for Plaintiff.
*Mills Gardner*, for Defendant.