## In re HALSEY ELECTRIC GENERATOR CO.

(District Court, D. New Jersey. December 30, 1909.)

1. BANKRUPTCY (§ 346\*)—DEBTS HAVING PRIORITY—TAXES.

Query, has a tax imposed, not upon tangible property, but upon the franchise of an insolvent corporation after it has been taken charge of by a court of bankruptcy, a preference under Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), which provides that the court shall order the trustee to pay all taxes legally due, and owing by the bankrupt in advance of the payment of dividends to creditors?

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 346.\*]

2. STATUTES (§ 181\*)—CONSTRUCTION—LEGISLATIVE INTENTION.

In the construction of a statute, for the purpose of determining the legislative intention, the court may be justified in some circumstances in giving weight to considerations of injustice or inconvenience which may result from a particular construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 263; Dec. Dig. § 181.\*]

3. BANKRUPTCY (§ 346\*) — DISTRIBUTION OF ESTATE — TAXES—PRIORITY OF EXPENSES OF PRESERVING AND ADMINISTERING ESTATE.

In the distribution of the assets of a bankrupt, the actual and necessary expense of preserving and administering the estate have priority over taxes; Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), which requires the court to order the trustee to pay all taxes legally due and owing "in advance of the payment of dividends to creditors," giving them priority of payment only from the net assets.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 346.\*]

In the matter of the Halsey Electric Generator Company, bankrupt. On petition by trustee. Order asked for granted.

See, also, 163 Fed. 118.

On motion of the trustee for an order authorizing him to pay the actual and necessary expenses incurred in preserving the estate pending litigation over the question of adjudication; there not being enough funds to pay the same and the franchise taxes imposed by the state of New Jersey on such bankrupt.

Howard H. Williams, for the motion.
Edmund Wilson, Atty. Gen., opposed.

RELLSTAB, District Judge. This case turns upon legal propositions. There is no controversy about the facts. On October 22, 1907, a petition in involuntary bankruptcy was filed against the Halsey Electric Generator Company, a New Jersey corporation. The company was not adjudicated a bankrupt until March 8, 1909. At the time of filing the said petition, a receiver was appointed who took charge of the estate until April 7, 1909, when the trustee was appointed and qualified. On the 29th day of August, 1908, the state of New Jersey presented its claim for unpaid franchise taxes assessed against said bankrupt for the years 1904 and 1908, pursuant to the act of the Legislature entitled "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof," approved April 18, 1884. Gen. St. N. J. p. 3335. The tax of 1904 amounted to

$4,250, and that of 1908 to $1,000, exclusive of interest and costs. The property of the bankrupt, consisting chiefly of a manufacturing plant, remained in the hands of the receiver for nearly 18 months pending litigation over the adjudication. The realty was subject to a mortgage which was sold under foreclosure proceedings; the estate in bankruptcy realizing nothing by such sale. The cash that came into the hands of the receiver was the sum of $1,352.62. The personal estate was sold by the trustee for $1,000. The amount that came into the hands of the receiver was less by the sum of $279.88 than the aggregate amount expended by him in preserving the estate, and that which came into the hands of the trustee was not sufficient to pay the receiver said deficit and the allowance made to him by the court for his services.

The state of New Jersey does not question the necessity of these expenditures, or the propriety of such allowance, but insists that it is entitled to the entire fund to the exclusion of such expenditures or allowances. It bases its contention on section 64 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447] 1 Fed. St. Ann. p. 682), and in support thereof cites New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, 17 Am. Bankr. Rep. 63; Chattanooga v. Hill, 139 Fed. 600, 71 C. C. A. 584, 15 Am. Bankr. Rep. 195; Waco v. Bryan, 127 Fed. 79, 62 C. C. A. 79, 11 Am. Bankr. Rep. 481; In re Prince & Walter (D. C.) 131 Fed. 546, 12 Am. Bankr. Rep. 675; and In re Weiss (D. C.) 159 Fed. 295, 20 Am. Bankr. Rep. 247. While the motion now before the court is limited to the moneys which came to the hands of the trustee, the decision will not be without effect on the liability of the receiver to account to the state for the moneys which came into his hands, and on the efficiency of the bankruptcy court in administering many insolvent estates; for, if the insistence of the state of New Jersey is sustained, the liability of the receiver to so account would seem to be precluded, and the court shorn of the means in many cases of preserving the estate pending litigation over the question of insolvency, and in the recovering of property fraudulently transferred or concealed.

Section 64, subs. "a," "b," Bankr. Act, the only parts pertinent to the present inquiry, reads:

"Debts which have priority.—a The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court.

"b. The debts to have priority, except as herein provided, and to be paid in full out of the bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases, and, where property of the bankrupt, transferred or concealed by him, either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the expense of one or more creditors, the reasonable expenses of such recovery; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of at-

torneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow; and (4) wages due to workmen, clerks, travelling or city salesmen, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

The franchise tax or license fee imposed by the state of New Jersey upon corporations organized under its laws is a tax within the meaning of subsection "a." New Jersey v. Anderson, supra. This decision is also relied upon as authority that the tax imposed for the year 1908 is entitled to the preference given by such section, notwithstanding that the petition in bankruptcy was filed in 1907, because such tax was due and owing before the adjudication. In the cited case it does not appear when the petition in bankruptcy was filed, but the adjudication, and not the filing of the petition, was taken as the time for determining whether the tax was due and owing. And it was there held that as the tax was made upon the basis of the capital stock issued and outstanding the 1st of January, presumably of the year during which the petition was filed, the tax was legally due and owing from that time, although not collectible until after the adjudication. In the case at bar the petition was filed several months before the taxing year of 1908 began. It is unnecessary, however, in this case, to determine whether the tax for that year has a preference, as the tax for 1904 is greater than the gross amount of the estate. Query, has a tax imposed, not upon tangible property, but upon the franchise of an insolvent corporation after it has been taken charge of by the bankruptcy court, a preference under section 64a of the bankruptcy act?

The claim, then, being for taxes due and owing, what preference is it entitled to? By section 6 of the New Jersey franchise tax act, it is provided that such tax "shall be a debt due from such company to the state, for which an action at law may be maintained after the same shall have been in arrears for the period of one month; such taxes shall also be a preferred debt in case of insolvency." And by section 7 such company could be enjoined from using its corporate franchise if such tax remained in arrears for a period of three months after the same should have become payable.

In the New Jersey Court of Errors and Appeals, on the question of priorities in insolvency proceedings, it was held that the franchise tax, notwithstanding the preference given by the statute, is subordinate to the expenses of winding up the insolvent corporation, including allowance to the receiver, but that it had preference over all other liabilities and debts. Chesapeake & O. Ry. Co. v. Atl. Trans. Co., 62 N. J. Eq. 751, 48 Atl. 997. In United States v. Eggleston, 4 Sawy. 199, 25 Fed. Cas. 979 (No. 15,027), it was held in regard to a claim of the United States which by section 3466, Rev. St. (U. S. Comp. St. 1901, p. 2314), was given priority. in payment in cases of insolvency, that:

"The priority of the United States only extends to the net proceeds of the property of the deceased, and therefore the necessary expenses of the administration are first to be paid."

These two cases, respectively, show that in construing statutes giving preference to the state for taxes and the United States for debts the priority extends only to the net proceeds.

The state contends, however, that a different rule obtains because of the positive direction of section 64 of the bankruptcy act. All corporations subject to the franchise tax imposed by the state are not amenable to the bankruptcy law. In case of insolvency of one not amenable, the proceedings to wind up being necessarily brought in the state or United States Circuit Court, the state's franchise tax by the judicial determination of its own court would be made subordinate to the cost of preserving and administering the property of such insolvent corporation; but if one of its corporations so taxed should be wound up in the bankruptcy court, it being one over which the bankruptcy court may have exclusive jurisdiction, it is contended that such franchise tax is not subordinate, but superior to even the necessary expenses incurred in securing and preserving the very property out of which alone it can secure its tax. The act should be so clear and unambiguous as to leave no reasonable doubt that it was the legislative intention to put taxes before everything before such a construction should be adopted. In re Prince & Walter and In re Weiss, supra, are cited as authority for this contention. In the former case the taxes were levied against the bankrupt's real estate. In the latter the taxes were due the United States, but for what it does not appear. In both cases it was held that taxes were entitled to priority of payment to the exclusion of the administration expenses. Judge Archbald, in Re Prince & Walter, at page 678 of 12 Am. Bankr. Rep., at page 550 of 131 Fed., after quoting from section 64, said:

"Taxes, as a class, are thus put at the head of everything—even above the expense of preserving the estate, or the cost of administering it. Brandenburg, § 1008; Collier (4th Ed.) 459. This is explicit and decisive, and, as the taxes of 1901 are unquestionably within the provisions of the act, they must be paid."

And Judge Hough, in Re Weiss, at pages 247–248 of 20 Am. Bankr. Rep., at page 296 of 159 Fed., after referring to Judge Archbald's statement in Re Prince & Walter (hereinbefore quoted) as not a dictum, said:

"The court could not have come to the conclusion it did without necessarily holding the doctrine contended for here by the government. This decision was cited with approval in City of Chattanooga v. Hill, 15 Am. Bankr. Rep. 195, 139 Fed. 600, 71 C. C. A. 584, and followed by the form of the order entered in Re Cramond (D. C.) 17 Am. Bankr. Rep. 40, 145 Fed. 966; and this case especially I feel bound to follow, as being in this circuit."

In neither the Chattanooga or Cramond Case was the question of priority of taxes over the administration expenses involved. In the latter the controversy related to the priorities among creditors claiming liens and preferences. In the former the question up for decision related to the apportionment of taxes between properties mortgaged and unmortgaged. As I read Judge (now Justice) Lurton's opinion in the former case, he, though referring to Judge Archbald's opinion in Re Prince & Walter that taxes were put at the head of everything, did not give his approval thereof. It was not necessary for the purposes of that case, and he expressly so stated. In truth his reasoning

suggests the query whether such taxes were prior to administration expenses. He did concur with the opinion expressed by Judge Pardee in Waco v. Bryan that taxes assessed against the bankrupt were entitled to the priority in payment given by section 64a, notwithstanding that the property assessed did not come to the hands of the trustee. But that, it will be readily observed, is an entirely different proposition from that which declares taxes ahead of everything. An examination of the Waco Case, one of those cited by the state of New Jersey, also shows that the priority of taxes over preserving and administering expenses was not under consideration. In re Prince & Walter and In re Weiss are distinguishable from the case at bar only in that the cost of preserving the estate was not therein drawn into question. No comfort, however, is derived from this difference, as the cost of administration in both was made subordinate to the taxes, and, if taxes are ahead of administration expenses, it is difficult to see why they should not have priority over the cost of preservation. Neither of the learned judges who decided these cases gives us the benefit of the reasons that led him to his conclusion. Judge Archbald cites Brandenburg, § 1008, and Collier (4th Ed.) 459, as authorities for his opinion. The former expressly asserts the priority of taxes; but the latter does not. Mr. Collier said:

"The words 'taxes legally due and owing by the bankrupt' and 'in advance of the payment of dividends to creditors' should be noted. In spite of them, the tendency has been to construe subsection 'a' as putting taxes in a different and really higher class than the debts enumerated in subsection 'b.' This is probably the law."

Mr. Brandenburg gives no authorities for his conclusion, and none of the authorities cited by Mr. Collier on pages 459 and 460 of that edition go to such extent. On the contrary, one of the cases cited, viz., In re Force (D. C.) 4 Am. Bankr. Rep. 114, is an authority for the reverse. In that case the contest was between the remaindermen and the trustee in bankruptcy, and related to the payment of taxes levied during the continuance of the life estate. These were paid by the remaindermen, after the life estate had ended, out of the surplus realized on foreclosure sale. There were no other assets in the hands of the trustee than the rents collected by him, and these were less than the taxes. The taxes were held chargeable on such rents, but the expenses of administration and the commissions of the trustee and a counsel fee for his attorney, and the commissions of the referee, were ordered to be paid first. In his seventh edition, however, Mr. Collier, page 730, incorporates Judge Archbald's language, viz., that "taxes as a class are thus put at the head of everything—even above the expenses of preserving the estate, and the cost of administering it." But he cites no earlier authority than In re Prince & Walter, and no other than those cited by the state of New Jersey, and which have already been considered.

The absence of any discussion by these learned authors and judges constrains me to the belief that in their judgment no other order of priority was permitted by the plain terms of the act. Mr. Remmington takes the contrary view, saying:

"Taxes from their nature ought to come next to costs in the order of priority, for without taxes the general government would fail; as, also, without costs

the particular protection of the state in the immediate property concerned could not be afforded. The state must not be delayed nor hindered in its collection of taxes, and it is this urgency that lies at the basis of the priority given to taxes.   *   *   *

"The statute, in section 64 (b), provides, as the item entitled to the next place in the order of distribution after costs of administration, 'wages due to workmen, clerks and servants.' Nevertheless section 64 (a) provides that taxes are to be paid before creditors. So the proper order of priority is for taxes next after costs of administration. And it seems improper in theory and unnecessary from the point of view of statutory construction to place taxes in advance of costs of administration." Rem. on Bankruptcy, pp. 1320, 1321.

There being a conflict among the judicial and textual authorities on this subject, and it being a matter of far-reaching importance, a re-examination of the question seems to be justified.

The prejudicial effect of such a rule on the administration of bankrupts' estates has already been adverted to. Its injustice to the administrators of the bankruptcy law is obvious. In most cases of involuntary and many of voluntary bankruptcy proceedings the preservation by the court of the estate is a necessity. For such purpose, it is authorized to appoint a receiver or the United States marshal to take charge of such estate. Sections 2 (3) and 69 of the bankruptcy act. If because of insufficient assets at the time the bankruptcy jurisdiction is invoked, or by the subsequent depreciation of the assets, there is not enough to pay the taxes and the cost of preserving the estate, and the taxes are given priority, who shall pay for the preservation? Such costs may not be charged against the bond of the petitioning creditors, for that is only to indemnify the bankrupt in case insolvency shall not be established. Section 3 (5), Bankr. Act. Has the court the power to penalize the petitioning creditors to the extent of mulcting them for such costs? Do they occupy any different position, in respect to such costs, from any of the other creditors? If insolvency is established, their invoking the remedy given by the bankruptcy act is justified. Shall such costs fall upon the marshal or other officer of the court whose duty it is to preserve such assets? If such costs are not chargeable against such assets, they must be paid by such creditors or the court's officer. Such injustice is not to be tolerated unless unavoidable.

Judge Ray, in Re Cramond, supra, repudiated such doctrine, so far as it related to preferred creditors. The learned judge said (page 28 of 17 Am. Bankr. Rep., page 971 of 145 Fed.):

"The money due on this contract belonged to the estate in bankruptcy subject to all valid liens, if any, and was properly paid to the trustee, and it is his duty to administer it or pay it over to those entitled thereto pursuant to the order and direction of this court which has its custody for the purposes of administration and distribution. The various claimants have proved their claims, and it is the duty of the court to adjudicate their respective rights and priorities and establish all liens on the funds and determine their amount and direct their payment. I do not understand the law to be, or that the bankruptcy act contemplates, that the referee and trustee shall do this work without compensation in case it shall be determined that the liens on the funds of the estate, assuming that all are subject to liens are equal to or greater than such assets. Such a rule would require the officers of the court to spend time and money in caring for, protecting, and preserving the funds of the estate, subject to the liens, for the benefit and profit of the lienors without compensation or reimbursement.

"The court of bankruptcy is a court of equity (section 2, Bankr. Act July 1, 1898, c. 541, 30 Stat. 545, 546 [U. S. Comp. St. 1901, p. 3420]), and, when it lawfully takes hold of and administers the estate of a bankrupt and has the funds in its possession for that purpose, it may direct, and it is its duty to direct, that the lawful fees and commissions of its officers and expenses of such administration be paid therefrom, and, when necessary in such cases, liens on such funds must abate for this purpose."

These reasons are as cogent to the case at bar as they were in the cited case, or can be in any bankruptcy case. The cost of preserving the estate is in the interest of every creditor, and, where the assets are insufficient to pay anything to the general creditors, the benefit inures entirely to those that are preferred. Why should they, then, in the absence of clear and express direction of the statute, be freed from such expenses, where no other provision is made to meet them? The mere statement of the inquiry implies the answer. In such cases the established rule in equity that those being in priority in the distribution of a trust fund inadequate to pay the priorities and the expenses of administering it must assume or share such expenses must be applied. Trustees v Greenough, 105 U. S. 527, 26 L. Ed. 1157; Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940; Meddaugh v. Wilson, 151 U. S. 333, 14 Sup. Ct. 356, 38 L. Ed. 183.

. If the claimant in the present case had taken proceedings to enforce its taxes of 1904, the expense of preserving the estate, as well as that of converting it into cash to liquidate its claim, would have fallen upon it. Why should there be a different rule when, instead of it taking direct proceedings, it suffers other creditors to bring the estate into the bankruptcy court? That the tax is due the sovereign does not minimize the justice of these reflections. The costs incurred in the administration of estates is the necessary result of the exercise of the sovereign's judicial power. There is nothing in the exercise of the taxing power that should give it preference to the exercise of the judicial power. Both are essential to the existence of government, and costs in husbanding and converting property into cash are inevitable even in enforcing tax liens.

These and other observations that will occur to any one charged with the collection and administration of estates are sufficient to lead to a repudiation of such a rule, unless our bankruptcy act permits of no other reasonable construction. For the purposes of this case it may be stated that if the statute clearly indicates a legislative purpose to make the expenses incurred in preserving and administering bankrupts' estates, subordinate to taxes, such purpose must be carried out, even though injustice to individuals results therefrom, and the administration of the bankrupt's estate be seriously prejudiced thereby. For, as was said in New Jersey v. Anderson, supra, page 490 of 203 U. S., page 139 of 27 Sup. Ct. (51 L. Ed. 284):

"Considerations of this character, however properly addressed to the legislative branch of the government, can have no place in influencing judicial determination. It is the province of the court to enforce, not to make, the laws, and, if the law works inequality, the redress, if any, must be had from Congress."

But, as was said in United States v. Fisher, 2 Cranch, 358-386, 2 L. Ed. 304:

"It is undoubtedly a well-established principle in the exposition of statutes that every part is to be considered, and the intention of the Legislature to be

extracted from the whole. It is also true that where great inconvenience will result from a particular construction that construction is to be avoided, unless the meaning of the Legislature be plain, in which case it must be obeyed."

And in Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1–37, 15 Sup. Ct. 508, 516, 39 L. Ed. 601:

"Undoubtedly the court, when endeavoring to ascertain the intention of the Legislature, may be justified in some circumstances in giving weight to considerations of injustice or inconvenience that may arise from a particular construction of the statute. Wilson v. Rousseau, 4 How. 646, 680 [11 L. Ed. 1141]; Bloomer v. McQuewan, 14 How. 539, 553 [14 L. Ed. 532]; Blake v. Nat. Banks, 23 Wall. 307, 320 [23 L. Ed. 119]; United States v. Kirby, 7 Wall. 482, 486 [19 L. Ed. 278]."

And in Knowlton v. Moore, 178 U. S. 41–77, 20 Sup. Ct. 747, 761, 44 L. Ed. 969:

"We are therefore bound to give heed to the rule that where a particular construction of a statute will occasion great inconvenience or produce inequality and injustice that view is to be avoided if another and more reasonable interpretation is present in the statute."

These judicial expressions sufficiently indicate the rules that should be kept in mind in the reading of a statute. Applying them to section 64 of the bankruptcy act, we find that subsection "a," in express terms, gives taxes a preference only over creditors. The language is:

"The court shall order the trustee to pay all taxes legally due and owing to the * * * state * * * in advance of the payment of dividends to creditors."

It is the sovereign against the individual, the moneys due the taxing power as against the debts owing to creditors, not as against the costs incurred in the exercise of the judicial power, that is here the subject-matter of legislation. By the terms of this subsection, the taxes are to be paid by the trustee upon the orders of the court. For such payment he is to be credited in his account, and, if any question arises as to the amount or legality of any such tax, the same is to be heard and determined by the court. This is in harmony with the general scheme and policy of the bankruptcy act. The court obtains exclusive jurisdiction over the bankrupt's estate. It is charged with the duty of recovering, preserving, administering, and distributing it. The tax that has not been paid by the bankrupt can be obtained only in the course of the administration of the estate. In case of a dispute over the amount or validity of the tax, the assets must necessarily be held pending the determination of such litigation. The payment is to be made out of the fund that comes into the trustee's hands. The priority given is only in advance of creditors, and is chargeable only on the net estate; i. e., that which remains after the cost of recovering, preserving and administering the estate is ascertained. So far, manifestly, no preference is given over the costs of preserving and administering the estate. Nor is there anything in the remaining subdivisions of this section that indicates a different legislative purpose.

Subsection "b" directs the order of payment of certain specified expenses and debts. It does not embrace all liabilities. Nothing is said of taxes, that having been considered in subsection "a," but they

are included in the phrase "except as herein provided" found in the first clause, although, strictly speaking, taxes, no more than the costs of preserving or administering an estate, may be said to be debts. There is nothing in any of the subsections that justifies the contention that taxes are to be paid before the cost of preserving and administering the estate, nor is there anything in the section as a whole that permits of such a conclusion.

The phrase "except as herein provided" does not necessarily mean that the taxes are to be paid in preference to everything else. It may be understood as meaning no more than that the order of priority in subsection "b" is to be the rule as among the subjects (the five classes) then being considered. These, as noted, embrace, not only expenses in preserving, recovering, and administering the estate, but certain classes of creditors, viz., wages (class 4) and debts given priority by the state or United States laws (class 5). These last two are the only classes of this subsection that deal with debts. These, of necessity, are such as existed before the bankruptcy proceedings began. They, as well as taxes, are debts of the bankrupt. The items covered by the first three classes of this subsection are not debts of the bankrupt. They have no existence before the commencement of the bankruptcy proceedings. They are incurred after the court takes possession of the estate. The taxes by subsection "a" are not given priority over such expenses by any express words, but they are by apt and express terms given priority only over creditors, and the only clauses of subsection "b" that deal with creditors are 4 and 5.

This phrase "except as herein provided," therefore, as far as it relates to taxes, means nothing more than that the creditors referred to in classes 4 and 5 are subordinate to taxes in the order of priority in payment. Something more than this phrase must be found to give taxes the priority over everything.

In Chesapeake & O. Ry. Co. v. Atl. Trans. Co. and United States v. Eggleston, supra, the statutory language giving preference was unqualified; yet the preference was made subordinate to administration expenses. In section 64 the preference for taxes is not given generally. The priority is only given as against creditors. The fact that in dealing with priorities taxes were first considered does not put them ahead. The language employed in stating the preference, and not the order of the statement, controls. If Congress had intended to give taxes the priority, it would have said so in clear and unambiguous language. It did not do this, but, on the contrary, by the express wording of the limitation annexed to the priority of taxes, it gave taxes the preference only over the claims of creditors. To hold otherwise would be not merely to treat such words of limitation as superfluous, but meaningless. No intendment is to be made in favor of such a construction. If we look elsewhere in the act, we find nothing that is inharmonious with this view. On the contrary, section 62 directs the payment of the actual and necessary expenses incurred by the officer in the estate in which they were incurred. By rule 34 of the General Orders in Bankruptcy (18 Sup. Ct. ix), adopted by the Supreme Court of the

175 F.—53

United States under the authority of the bankruptcy act, it is provided that:

"In cases of involuntary bankruptcy, when the debtor resists an adjudication, and the court, after hearing, adjudges the debtor a bankrupt, the petitioning creditor shall recover, and be paid out of the estate, the same costs that are allowed to a party recovering in a suit in equity; and if the petition is dismissed, the debtor shall recover like costs against the petitioner."

"Words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the Legislature has in view." End. Int. Stat. (1888) § 73, p. 94.

To my mind Congress has by apt words signified its intention to make taxes subordinate to the payment of the cost of preserving and administering a bankrupt's estate. If, however, I should concede that the arrangement of the priorities leaves that in doubt, I should still be constrained by well-recognized rules for the interpretation of statutes to resolve that doubt in favor of the cost of preserving and administering the estate. As is said by Endlich in his admirable work:

"In determining either what was the general object of the Legislature or the meaning of its language in any particular passage, it is obvious that the intention which appears to be most agreeable to convenience, reason, and justice should in all cases open to doubt be presumed to be the true one." Section 245, p. 324. "Where the intention of the Legislature or the law is doubtful and not clear, the judges ought to interpret the law to be what is most consonant to equity, and least inconvenient." Section 251, p. 335. "Whenever the language admits of two constructions, it is obvious that the more reasonable of the two should be adopted as that which the Legislature intended." Id. § 258, p. 343.

Keeping the legislative purpose of the bankruptcy act in mind, and viewing the language employed in the act in dealing with priorities, in the light of the foregoing suggestions, I am of the opinion that in the distribution of the assets of the bankrupt the actual and necessary costs of preserving and administering the estate have priority over taxes.

In this case the moneys in the hands of the trustee are insufficient to pay the expenses of preserving the estate while in the hands of the receiver. The trustee is directed to apply such moneys on account of such expense, the same having been approved by previous order made in this cause.

The order asked for by the trustee is granted.